# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREDERICK BANKS,                    )
                                    )
             Plaintiff,[1]          )
                                    )
        v.                          )        Civil Action No. 06-1950 (EGS)
                                    )
DEPARTMENT OF JUSTICE, *et al.*,    )
                                    )
             Defendants.            )

## MEMORANDUM OPINION

This matter is before the Court on defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.[2]  The motion will be granted in part and denied in part without prejudice.

## I.  BACKGROUND

Plaintiff brings this action pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a.   Generally, he alleges that the federal government entities to which he submitted requests in 2004, 2005, and 2006 for information about himself either released no records or released only a portion of the records he sought.  *See* Compl. at 2 (page numbers designated by the Court).

Due to the large number of FOIA and Privacy Act requests and federal agencies involved in this case, the Court departs from its usual format.  Rather than setting forth the chronology of

---

[1]        Plaintiff purports to bring this action on behalf of "Vampire Nation," which he describes as "a dark electronic music project."  Compl. ¶ 1.  Because no person signed the complaint on Vampire Nation's behalf, it is not considered a party to this action.  Moreover, with respect to the Privacy Act claims, Vampire Nation is not an individual with standing to bring a claim under the Privacy Act.  *See* 5 U.S.C. § 552a(a)(2) (defining the term "individual" to include "a citizen of the United States or an alien lawfully admitted for permanent residence").

[2]        The Court will deny plaintiff's cross-motion for summary judgment [Dkt. #25] because it fails to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h).

each agency's receipt and handling of plaintiff's request, relevant background facts are set forth with the discussion of a particular issue.

## II.  DISCUSSION

### A.  Defendants' Motion to Dismiss

Defendants move to dismiss Counts Seven, Eight, Eleven and Twelve on the ground that neither the United States Probation Office nor the Administrative Office for United States Courts is subject to FOIA and the Privacy Act.  *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Or, in the Alternative, for Summary Judgment ("Defs.' Mot.") at 29-30.  The Court agrees.

The term "agency" as defined for purposes of FOIA and the Privacy Act expressly excludes the courts of the United States.  *See* 5 U.S.C. §§ 551(1)(B), 552(f)(1).  The phrase "courts of the United States" is interpreted such that this exemption applies to the entire judicial branch of government.  *See Washington Legal Found. v. United States Sentencing Comm'n,* 17 F.3d 1446, 1449 (D.C. Cir. 1994).  The United States Probation Office is an arm of the federal courts.  *Maydak v. United States Dep't of Justice,* 254 F. Supp. 2d 23, 40 (D.D.C. 2003).  As such, it is not subject to FOIA and the Privacy Act and plaintiff's claims against it cannot be maintained.  *DeMartino v. Fed. Bureau of Investigation*, 511 F. Supp. 2d 146, 148 (D.D.C. 2007) (dismissing FOIA and Privacy Act claims against Probation Office which, "[a]s a court unit . . . is not subject to the requirements of the FOIA and Privacy Act); *Callwood v. Dep't of Prob. of the Virgin Islands*, 982 F. Supp. 341, 343 (D.V.I. 1997) (concluding that Department of Probation is not an agency subject to the Privacy Act).  Likewise, the Administrative Office of the United States Courts is an arm of the federal courts and therefore is not subject to FOIA and the Privacy Act.  *See Chambers v. Div. of Prob., Admin. Office of U.S. Courts*, No. 87-0163,

1987 WL 10133, at *1 (D.D.C. Apr. 8, 1987) (dismissing Privacy Act complaint as to the

Division of Probation, Administrative Office of the United States Courts).  It matters not, as

plaintiff argues, that the Administrative Office of the United States Courts "is not a court itself."

Pl.'s Opp'n at 3.

Defendants' motion to dismiss Counts Seven, Eight, Eleven and Twelve will be granted.

### B.  Defendants' Motion for Summary Judgment

#### 1.  Summary Judgment Standard

A motion for summary judgment is granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, show that there is no genuine

issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in

the moving party's affidavits may be accepted as true unless the opposing party submits his own

affidavits or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.

1992).

In a FOIA case, the Court may grant summary judgment based on the information

provided in affidavits or declarations when those affidavits or declarations describe "the

documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or

declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'"  *SafeCard*

*Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

2. <u>Failure to Exhaust Administrative Remedies</u>

"Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA. *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). It is not a jurisdictional requirement, *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur*, 355 F.3d at 677. If a requester has not exhausted his administrative remedies prior to the filing of a civil action, his claim is subject to dismissal. *See Hidalgo*, 344 F.3d at 1258. Similarly, a Privacy Act requester must exhaust administrative remedies before bringing suit against an agency for access to agency records pertaining to him. *See Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990).

An agency may assess fees for the search for and duplication of documents requested under FOIA, and may require advance payment before processed records are released. 5 U.S.C. § 552(a)(4)(A). "Exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 66; *Trueblood v. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996). Commencement of a civil action pursuant to FOIA does not relieve a requester of his obligation to pay any required fees. *See Pollack v. Dep't of Justice*, 49 F.3d 115, 120 (4th Cir.), *cert. denied*, 516 U.S. 843 (1995); *Trueblood*, 943 F. Supp. at 68-69.

i.  Neither the Financial Crimes Enforcement Network
Nor the Department of State Received
a FOIA or Privacy Act Request From Plaintiff

Defendants argue that plaintiff cannot maintain his claims against the Financial Crimes

Enforcement Network ("FinCEN") and the United States Department of State because he failed

to exhaust his administrative remedies before filing suit.  *See* Defs.' Mot. at 3.

FinCEN is a component of the United States Department of the Treasury.  Defs.' Mot.,

Declaration of Gregory Smith ("Smith Decl.") ¶ 1.  It maintains both a paper copy and an

electronic index of each FOIA and Privacy Act request it receives.  *Id.* ¶¶ 4-5.  The paper copies

are maintained in file rooms and the requests are arranged chronologically by the tracking

number assigned to each request.  *Id.* ¶ 5.  The electronic index is searched using the requester's

name.  *Id.* ¶ 4.  The declarant states that he searched FinCEN's "electronic index using the

computer inquiry software and the collection of papers by searching alphabetically through the

papers for the [plaintiff's] name[]," and the search yielded no record of FinCEN's receipt of any

FOIA or Privacy Act request from plaintiff.  *Id.*

The United States Department of State's Office of Information Programs and Services

("IPS") receives, acknowledges, and processes requests for State Department records, including

requests made pursuant to FOIA and the Privacy Act.  Defs.' Mot., Declaration of Margaret P.

Grafeld ("Grafeld Decl.") ¶¶ 1-2.  "IPS maintains an automated case tracking system which

assigns case control numbers to, and tracks the status of, all FOIA and Privacy Act requests

received by IPS."  *Id.* ¶ 5.  Staff log each request into the tracking system and include such

information as the requester's name and the topic of a FOIA request.  *Id.*  The tracking system

"is text searchable on a field-by-field basis."  *Id.*

IPS staff conducted two searches of the automated case tracking system for requests from or about plaintiff. Grafeld Decl. ¶ 6. There was no record of any FOIA or Privacy Act request from or about plaintiff for the time period from January 1, 2004 through January 11, 2007. *Id.*

Plaintiff argues that his only obligation was to "place[] all of his FOIA/PA requests as mentioned in the lawsuit in the mail." Plaintiff's Response in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Pl.'s Opp'n") at 2. According to plaintiff, "[i]f the requests were not received by the government agencies or were sent to the wrong department is immaterial as Banks is in federal prison." *Id.* As a federal prisoner, he asserts that he "cannot be the gatekeeper for sloppy handling of his mail by federal officials." *Id.*

Federal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. at 150. It cannot be said that an agency improperly withheld records if the agency did not receive a request for those records. *See West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006), *aff'd*, No. 06-5281, 2007 WL 1723362 (D.C. Cir. Mar. 6, 2007) (per curiam); *see also* 5 U.S.C. § 552(a)(6)(A)(I) (agency's response is due within "within twenty days . . . after the receipt of [a FOIA] request").

Defendants demonstrate that neither FinCEN nor the State Department received a FOIA or Privacy Act request from or about plaintiff. "Without any showing that the agency received the request, the agency has no obligation to respond to it." *Hutchins v. Dep't of Justice*, No. 00-2349, 2005 WL 1334941, at *1-2 (D.D.C. June 6, 2005). Accordingly, the Court will grant summary judgment for defendants on Counts Fifteen, Sixteen, Seventeen and Eighteen of the Complaint.

ii.  The United States Postal Inspection Service Did Not Receive Verification of
Plaintiff's Identity Regarding His March 24, 2006 Request

The United States Postal Investigation Service ("USPIS") "received a renewed request

for documents" pertaining to plaintiff on March 24, 2006.[3]  Defs.' Mot., Declaration of

Lawrence Katz ("Katz Decl.") ¶ 16.  Regulations required that each requester "submit an

original notarized signature to ensure that the records of individuals who are the subject of

USPIS systems of records are not wrongfully disclosed."  *Id.*; *see* 39 C.F.R. § 266.6(a).  The

declarant stated that USPIS has "no record that [plaintiff] ever furnished this information."  Katz

Decl. ¶ 16.

Plaintiff responds by arguing that verification of his identity was not required "because

[he] verified that he was the person making the request under the penalty of perjury by invoking

28 USC 1746."  Pl.'s Opp'n at 4.  His argument is not persuasive.  Nothing on the face of his

March 2006 request indicates that he invoked 28 U.S.C. § 1746 or otherwise made his request

under penalty of perjury.  *See* Katz Decl., Ex. O.  USPIS regulations require that a requester

"present personal identification sufficient to satisfy the custodian as to his identity prior to record

review."  39 C.F.R. § 266.6(b)(2).  To this end, USPIS sent plaintiff a form on which to submit

either an original notarized signature or a declaration of his identity in lieu of a notarized

signature pursuant to 28 U.S.C. § 1746.  *See* Katz Decl., Ex. P.

A FOIA request must comply with agency regulations.  *See Church of Scientology v.

Internal Revenue Serv.*, 792 F.2d 146, 150 (D.C. Cir. 1986), and defendants demonstrate that

plaintiff's request did not comply with 39 C.F.R. § 266.6.  Accordingly, the Court will grant

---

[3]      USPIS treated the March 24, 2006 request as a new request, assigned FOIA No. 2006-FPIS-00167, even
though plaintiff appeared to be renewing a prior request (FOIA No. 2005-FPIS-00020) for records deemed exempt
from disclosure under FOIA Exemption 7(A).  *See* Katz Decl., ¶ 7 & Ex. O.

summary judgment with respect to Counts Five and Six insofar as these counts pertain to plaintiff's March 24, 2006 request.

          iii.  Plaintiff Did Not Pay Fees Assessed by the EOUSA

DOJ components may charge for processing requests under the FOIA.  *See* 28 C.F.R. § 16.11(a).  Components may charge search fees "for all requests – other than requests made by educational institutions, noncommercial scientific institutions, or representatives of the news media," 28 C.F.R. § 16.11(c), and also "may charge for time spent searching even if they do not locate any responsive record or if they withhold the record(s) located as entirely exempt from disclosure."  28 C.F.R. § 16.11(c)(1).  Duplication fees of ten cents per page are charged generally.  28 C.F.R. § 16.11(c)(2).  Where the requester does not seek records for a commercial use, the first 100 pages and the first two hours of search are provided free of charge.  28 C.F.R. § 16.11(d)(3).  "Components shall charge fees for duplication of records under the Privacy Act in the same way in which they charge duplication fees under [28 C.F.R. § 16.11]."  28 C.F.R. § 16.49.  However, "[n]o search or review fee may be charged for any record unless the record has been exempted from access under Exemptions (j)(2) or (k)(2) of the Privacy Act."  *Id.*

In a situation where one requester has filed multiple requests, DOJ regulations provide for the aggregation of requests and fees:

> Where a component reasonably believes that a requester or a group of requesters acting together is attempting to divide a request into a series of requests for the purpose of avoiding fees, the component may aggregate those requests and charge accordingly. Components may presume that multiple requests of this type made within a 30-day period have been made in order to avoid fees. Where requests are separated by a longer period, components will aggregate them only where there exists a solid basis for determining that aggregation is warranted under all the circumstances involved. Multiple requests involving unrelated matters will not be aggregated.

28 C.F.R. § 16.11(h). If a requester "fail[s] to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount . . . before the component begins to process a new request or continues to process a pending request from that requester." 28 C.F.R. § 16.11(i)(3). Where the component has required such advance payment, the request "shall not be considered received and further work will not be done on it until the required payment is received." 28 C.F.R. § 16.11(i)(4).

Upon receipt of plaintiff's December 27, 2004 request under FOIA and the Privacy Act for information about himself, EOUSA staff determined that responsive records might be found in the following United States Attorney's Offices: the Western District of Pennsylvania, the District of Columbia, the Northern District of Ohio, the District of Colorado, the Eastern District of California, and the Middle District of Florida. Defs.' Mot., Declaration of John F. Boseker ("Boseker Decl.") ¶ 4. EOUSA "created multiple files to reflect the several searches to be performed." *Id.* ¶ 6. Relevant to this discussion are FOIA Nos. 05-61 and 05-1625, the files created for records maintained by the United States Attorney's Offices for the Western District of Pennsylvania (USAO/WDPA) and the District of Colorado (USAO/DCO), respectively.[4] EOUSA acknowledged receipt of FOIA No. 05-61 by letter dated January 13, 2005, *id.* ¶ 11 & Ex. F, and acknowledged receipt of FOIA No. 05-1625 by letter dated June 20, 2005. *Id.* ¶ 49 & Ex. KK. Both letters contained identical language regarding the assessment of fees:

> By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, we are required to charge fees for time used to search for the documents

---

[4]    EOUSA separated the portion of plaintiff's requests for information about himself from those seeking information about Vampire Nation. Boseker Decl. ¶ 10. FOIA No. 05-1625 pertains to the request for records about Vampire Nation that may be maintained by the United States Attorney's Office for the District of Colorado. *Id.* ¶ 49. EOUSA assessed an aggregated search fee of $168 for six hours of search time in excess of the two hours provided without charge. *Id.*, Ex. L.

you have requested and for duplication of all pages released to you.  Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free.  Please do not send any payment at this time!  If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees.  After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you.  Without such payment, your file will be closed without further action.

*Id.*, Ex. F (emphasis in original).

On February 11, 2005, EOUSA notified plaintiff that it located approximately 2000 pages of records potentially responsive to FOIA No. 05-61.  Boseker Decl. ¶ 12.  Pursuant to 28 C.F.R. § 16.11(e), the EOUSA estimated that search and copy fees would exceed $25, and sought plaintiff's agreement to pay the anticipated fees.  *Id.*, Ex. G.  In the alternative, the EOUSA suggested that plaintiff "reformulate his request to potentially reduce that sum."  *Id.* Until such time as plaintiff either agreed to pay the anticipated fees or reformulated his request, the EOUSA would not process his request further.  *Id.*  Plaintiff agreed to pay the anticipated fees.  *Id.* ¶ 13 & Ex. H.

The EOUSA notified plaintiff by letter dated July 13, 2005 that no records responsive to FOIA No. 05-1625 had been located in the District of Colorado.  Boseker Decl. ¶ 50 & Ex. LL.  The letter again advised plaintiff that "search times and duplication fees for all districts requested will be aggregated," and that, as of July 13, 2005, his combined requests "have exceeded the two (2) hours free search time by two (2) hours."  *Id.*, Ex. LL.

By letter dated August 8, 2005, EOUSA notified plaintiff that it was prepared to release

certain records responsive to FOIA No. 05-61.  Boseker Decl. ¶ 14 & Ex. I.  However, EOUSA

would not release any records until plaintiff paid a search fee:

> You previously agreed to pay search and/or copying costs.  A
> $168.00 search fee is being assessed for these records.  If you
> would like these records, please send a check or money order for
> $168.00, payable to the Treasury of the United States. . ..  **If
> payment is not received within 30 days from the date of this
> letter, your request will be closed and any future requests for
> records will be rejected until payment is received.**  Please note
> that this may not be the final costs associated with the processing
> of your numerous requests.  There are still open requests **(05-1623
> and 05-1627)** that will increase the final search/copying fees.  We
> will be unable to determine the final costs after we have received
> responses from all of the districts listed in your requests.  We will
> notify you accordingly at that time.

*Id.*, Ex. L (emphasis in original).[5]  EOUSA sent another letter to plaintiff dated October 3, 2005,

reminding plaintiff of the assessment of search fees and again warning plaintiff that his file

would be closed if he did not send payment.  *Id.*, Ex. L.  When EOUSA did not receive payment

timely, it closed the file for FOIA No. 05-61 for nonpayment of fees.  *Id.* ¶ 18.

Plaintiff counters by arguing that he "never refused to pay outstanding fees [but] merely

contested if the Freedom of Information and Privacy Act Defendants may request search fees."

Pl.'s Opp'n at 2.  Because his request was for personal, not commercial, use, he argues that no

fees should have been assessed.  *Id.* at 4.  Under these circumstances, EOUSA is authorized to

assess search fees pursuant to 28 C.F.R. § 16.11(a), (c), and plaintiff's arguments are meritless.

Defendants demonstrate that plaintiff did not exhaust his administrative remedies with

respect to the EOUSA requests because he did not pay the aggregated fees assessed with respect

to FOIA Nos. 05-61 and 05-1625.  EOUSA establishes that its decision to aggregate plaintiff's

---

[5]      FOIA Nos. 05-1623 and 05-1627 are requests to the United States Attorney's Offices for the District of
Columbia and the Middle District of Florida, respectively, for information about Vampire Nation.  *See* Boseker
Decl. ¶¶ 49-50, 54-55.

FOIA requests and fees was proper under 28 C.F.R. § 16.11(h), that it properly demanded payment in advance of any release of responsive records, and that it did not process further any of plaintiff's other requests pending receipt of his payment of search fees. Accordingly, defendants' motion for summary judgment will be granted with respect to plaintiff's FOIA and Privacy Act claims in Counts One and Two.[6]

### 3. Searches for Responsive Records[7]

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. But if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

---

[6]    Defendants argue that plaintiff's failure to exhaust administrative remedies by paying assessed search fees applies not only to his requests to EOUSA, but also to the requests to FBI, BOP, and USMS. *See* Defs.' Mot. at 9-10. Review of the defendants' supporting declarations shows that only EOUSA relies on plaintiff's failure to pay search fees as a basis for its determination on plaintiff's requests. The declarations supporting the motions on behalf of FBI, BOP, and USMS address the receipt and handling of plaintiff's requests and, regarding BOP and USMS, the release or withholding of records. Absent controlling authority for such agency-wide application of regulations for aggregating requests and fees, the Court rejects defendants' argument.

[7]    FBIHQ's initial search of its Central Records System ("CRS") has yielded approximately 2,500 pages of records potentially responsive to plaintiff's request, *id*. ¶ 41, yet as of the filing of defendants' motion, none of these records had been processed. *See id*. ¶¶ 43-44. The Court defers its consideration of the adequacy of FBIHQ's search until such time as review of the records is completed. The Court will direct defendants to file either a status report to the Court on FBIHQ's processing of these records or a dispositive motion.

i. United States Postal Inspection Service

USPIS received three FOIA and Privacy Act requests from plaintiff for records pertaining to himself, two of which also sought information pertaining to nine other individuals. Defs.' Mot., Declaration of Lawrence Katz ("Katz Decl.") ¶¶ 5, 15-16.  The declarant explains that "a responsible person conducted a thorough and sufficient search for existing records relating to [plaintiff]" maintained in the Pittsburgh and Washington, DC Field Offices.  *Id.* ¶ 19. Further, he states that another "responsible person also conducted thorough and sufficient searches by contacting the Inspector in Charge, Pittsburgh Division and or using the [Inspection Service Integrated Investigative System]."  *Id.*  Nothing in the declaration describes the means by which these "responsible persons" conducted the search or searches, nor adequately explains the systems of records or places searched.

Based on the current record, defendants do not demonstrate that USPIS conducted a reasonable search for records responsive to plaintiff's FOIA and Privacy Act requests. Accordingly, the Court will deny summary judgment without prejudice on Counts Five and Six.

ii.   Federal Bureau of Prisons

Plaintiff submitted three separate requests to BOP for records about himself.  *See* Defs.' Mot., Declaration of Kathleen Quigley ("Quigley Decl.") ¶¶ 4, 10, 12.  With respect to the first, assigned Request Number 2006-00951, *id.* ¶ 4, the agency "conducted a systematic search" by having staff at the institution where plaintiff was incarcerated at that time "forward a complete copy of Plaintiff's entire central and medical files."  *Id.* ¶ 7.  It is unclear whether these files were the only files maintained by BOP likely to contain information about plaintiff, particularly where plaintiff asked that "all databases are to be searched" for records "about [plaintiff], pertaining to [plaintiff], or mention [his] name."  *Id.*, Ex. 1.

In his second request, assigned Request Number 2006-06384, plaintiff sought "everything in the Federal Bureau of Prisons databases that pertain to [plaintiff], about [plaintiff] or mention [his] name." Quigley Decl., Ex. 5. The declarant explained that BOP "notified [plaintiff] that records had been received and processed," and that 23 pages of records were released in full. *Id.* ¶ 11. Again, the supporting declaration did not explain how or where the records were located.

In response to plaintiff's third request for all central file records pertaining to him, assigned Request Number 2006-07658, BOP instructed plaintiff to contact staff at the institution where he was incarcerated and to make arrangements for review of his central file. Quigley Decl. ¶¶ 12-13. "Copies of disclosable documents may be obtained locally." *Id.* ¶ 13.

Based on the current record, defendants do not demonstrate that BOP conducted a reasonable search for records responsive to plaintiff's FOIA and Privacy Act requests. Accordingly, the Court will deny summary judgment without prejudice on Counts Nine and Ten.

### iii.  United States Marshals Service

By letter dated January 20, 2005, plaintiff requested from the USMS records pertaining to himself. Defs.' Mot., Declaration of William E. Bordley ("Bordley Decl.") ¶ 2 & Ex. A. Plaintiff later identified the Western District of Pennsylvania and the Middle District of Florida as the judicial districts where he believed responsive records would be found. *Id.*, Ex. C.

The USMS has no central file management system; rather, "files are decentralized and maintained by individual USMS districts or components." Bordley Decl. ¶ 6. The Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS) (JUSTICE/USM-005) and the Warrant Information Network (WIN) (JUSTICE/USM-007) are the two nationwide electronically indexed records systems maintaining records about prisoners in USMS custody.

*Id.* ¶ 7.  Each USMS district office has decentralized segments of these two systems of records

consisting of "computerized databases and manual file records corresponding to the electronic

indices."  *Id.*  The systems are searched using a person's name, date of birth, social security

number, and prison registration number as identifiers.  *Id.*  Using these identifiers which plaintiff

included in his request, USMS staff located 186 pages of records in the Western District of

Pennsylvania.  *Id.* ¶ 8.  None were found in the Middle District of Florida.  *Id.*

Plaintiff raises no objection to the adequacy of the USMS' search for records.  Having

reviewed USMS' supporting declaration, the Court concludes that its search was  "reasonably

calculated to uncover all relevant documents."  *Valencia-Lucena*, 180 F.3d at 325.

Of the 186 pages of records located, USMS released 133 pages in their entirety, withheld

in part 14 pages of records under FOIA Exemption 7(C), and withheld in full 4 pages of records

under FOIA Exemption 7(C).  Bordley Decl. ¶ 9.  In addition, USMS referred 35 pages of

records to other DOJ components for their disclosure determination and direct response to

plaintiff: 18 pages of records to FBI; 5 pages to BOP, and 12 pages to EOUSA.[8]  *Id.* ¶¶ 10-12.

### 4.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(7)(C).  In assessing whether records are compiled for law enforcement

purposes, the "focus is on how and under what circumstances the requested files were compiled,

and whether the files sought relate to anything that can fairly be characterized as an enforcement

proceeding."  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and

---

[8]        If a DOJ component determines that it is not the component best able to process a FOIA request, it may
"[r]efer the responsibility for responding to the request regarding that record to the component best able to determine
whether to disclose it, or to another agency that originated the record."  28 U.S.C. § 16.4(c).  It may treat a Privacy
Act request in a similar manner.  *See* 28 C.F.R. § 16.42(c).  The Court concludes that the USMS' decision to refer
records to the DOJ components where they originated, *see* Bordley Decl. ¶¶ 9-12 & Ex. E-H, was appropriate under
the circumstances.  *See McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1111-12 (D.C. Cir. 1983).

internal quotations omitted).  Here, the declarant explains that the systems where records responsive to plaintiff's request were found, the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS) (JUSTICE/USM-005) and the Warrant Information Network (WIN) (JUSTICE/USM-007), "assist USMS in carrying out its statutory law enforcement responsibilities."  Bordley Decl. ¶ 8.  Those responsibilities are "related to the execution of federal arrest warrants and the investigation of fugitives, along with the receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a law enforcement officer until the prisoners are committed by the court to the Attorney General for service of sentence, returned to the custody of the U.S. Parole Commission or Bureau of Prisons, or released from custody."  *Id.*  USMS thus establishes, and plaintiff does not dispute, that the records at issue were compiled for law enforcement purposes to which Exemption 7 applies.

In determining whether Exemption 7(C) applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

USMS applied Exemption 7(C) to 14 pages of records redacted so as to withhold "the names of law enforcement officers, prisoners, and other third party individuals."  Bordley Decl.

¶¶ 17-18.  In addition, USMS withheld a third party's telephone number.  *Id.*  It also applied Exemption 7(C) to withhold in full four pages of record described as "NCIC printouts on third party individuals."  *Id.* ¶ 19.  The declarant explained that "[p]rotecting law enforcement officers and other government employees' identities . . . promot[es] the efficient performance of official duties" by protecting these persons from " unnecessary public attention, harassment, annoyance or danger."  *Id.*  In addition, it was appropriate to withhold this information because "[p]ublic identification of these individuals could [] subject them to harassment, unwarranted scrutiny, and danger in their private lives."  *Id*.  Furthermore, release of this information "would not shed any light on the USMS's performance of its statutory duties."  *Id.*

Redaction of the names of law enforcement personnel under similar circumstances routinely is upheld.  *See, e.g., Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Keys v. Dep't of Homeland Sec*., 510 F. Supp. 2d 121, 128 (D.D.C. 2007) (concluding that personal information about law enforcement personnel is protected under Exemption 7(C)); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  Similar justification for non-disclosure applies where the EOUSA invokes Exemption 7(C) to withhold the identities of and personal information about third parties mentioned in these records.  *See, e.g., Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134

(2002); *SafeCard Servs., Inc.*, 926 F.2d at 1206 (holding that "names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure"); *Keys*, 510 F. Supp. at 129 (concluding that names of and identifying information about third parties mentioned in Secret Service records is protected under Exemption 7(C)).

5. <u>Segregability</u>

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology  v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir.1979)).

Having reviewed USMS' declaration, the Court concludes that only the exempt records or portions of records have been withheld, and that all reasonably segregable material has been released to plaintiff.  The declaration related to these records adequately specifies "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

The USMS demonstrates its full compliance with its obligations under FOIA and the Privacy Act.  Accordingly, the Court will grant summary judgment with respect to Counts Thirteen and Fourteen of the Complaint.

III.   CONCLUSION

The Court will dismiss with prejudice Counts Seven, Eight, Eleven and Twelve of the Complaint because the Office of Probation and the Administrative Office for United States Courts are not subject to FOIA and the Privacy Act.  The Court will grant summary judgment on Counts One, Two, Fifteen, Sixteen, Seventeen and Eighteen on the ground that plaintiff did not exhaust administrative remedies regarding his requests to EOUSA, FinCEN, and the State Department before filing this lawsuit.  With respect to plaintiff's claims against USMS, the Court will grant summary judgment as to Counts Thirteen and Fourteen because USMS demonstrates its full compliance with FOIA and the Privacy Act.  The Court will grant summary judgment in part on Counts Five and Six only with respect to plaintiff's March 24, 2006 request to USPIS.  Finally, the Court will deny defendants' motion without prejudice as to Counts Three, Four, Five, Six, Nine and Ten because, based on the current records, defendants do not demonstrate compliance with FOIA and the Privacy Act.

An Order consistent with this Memorandum Opinion will be issued separately.


Signed:          EMMET G. SULLIVAN
                 United States District Judge

Dated:           March 16, 2008