UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAMPIRE NATION and FREDERICK BANKS,)
                                    )
            Plaintiff,              )
                                    )
    v.                              ) Civil Action No. 06-1950 EGS
                                    )
DEPARTMENT OF JUSTICE, et al.,      )
                                    )
            Defendants.             )
_____)

RENEWED MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants

hereby move to dismiss what remains of this action.  In the

alternative, the Court is asked to enter summary judgment in

favor of the remaining Defendants,[1] pursuant to Fed. R. Civ. P.

_____

[1]  As identified in the Complaint, the defendants included: the
Department of Justice ("DOJ"); the Federal Bureau of
Investigation ("FBI"); the United States Postal Inspection
Service ("USPIS"); the United States Probation Office; the
Federal Bureau of Prisons ("BOP"); the Administrative Office of
the United States Courts; the United States Marshals Service
("USMS"); Financial Crimes Enforcement Network ("FinCEN"); and
the Department of State ("DOS").  By Order entered March 17,
2008, this Court resolved all claims involving the United States
Probation Office; the Administrative Office of the United States
Courts; the USMS; FinCEN; DOS and USPIS.  Defendants note,
however, that the Court's Order appeared to specify that judgment
in favor of USPIS on Counts Five and Six was "only with respect
to plaintiff's March 24, 2006 request," given Mr. Banks' failure
to verify his identity in the request.  March 17, 2008 Mem. Op.
at 19.  Upon closer review of the Complaint, however, it becomes
apparent that those counts sought relief only with respect to the
"renewed request to the [USPIS]"  Complaint, ¶¶ 12-16 (emphasis
added).  That "renewed request" was the March 24, 2006 request.
See Declaration of Lawrence Katz, ¶¶ 7-16 and Exhibit O;
Complaint, ¶¶ 13-14.  Thus, USPIS submits that the Court's March
17, 2008 Order resolved all claims set out in the Complaint
against USPIS.

56, because there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law.[2]  The FBI shall separately advise the Court, as required in the Court's March 17, 2008 Order, of the status of Mr. Banks' request to the FBI.

---

[2]  To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendant.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The Court is respectfully referred to the accompanying memorandum and to the statement of material facts accompanying this motion.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAMPIRE NATION and FREDERICK BANKS,)
                                   )
          Plaintiff,               )
                                   )
     v.                            ) Civil Action No. 06-1950 EGS
                                   )
DEPARTMENT OF JUSTICE, et al.,     )
                                   )
          Defendants.              )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

The claims remaining in this case arise under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, and pertains to asserted FOIA/Privacy Act requests to the Defendants.  What remain are claims against the Federal Bureau of Prisons (Counts Nine and Ten) and the Federal Bureau of Investigation ("FBI").  BOP submits the accompanying information in further support of the adequacy of its search, and further submits that, for the additional reasons set forth in the March 19, 2007 Memorandum Of Points And Authorities In Support Of Defendants' Motion To Dismiss Or, in the Alternative, for Summary Judgment, summary judgment in its favor is appropriate.

ARGUMENT

BOP's Search

In the Court's March 17, 2008 Memorandum Opinion, this Court concluded that the explanation of the BOP's search methodology by which it acquired responsive documents about Plaintiff Banks was

insufficient to warrant summary judgment.  See March 17, 2008
Mem. Op. at 13-14; Banks v. Department of Justice, 538 F.Supp.2d
228, 238-39 (D.D.C. 2008).

Accompanying this memorandum is a Supplemental Declaration
Of Kathleen Quigley, explaining in greater detail the basis for
the BOP's assertion that it has conducted an adequate search for
responsive documents.  With this additional record evidence of
the adequacy of the search, summary judgment is appropriate.

BOP asks that the Court further consider that Plaintiff is
on notice that when requests such as his are received by the BOP,
they are to be interpreted to encompass requests for inmates'
Central files and medical files, the very files which were
located in the search for responsive records.  See Supplemental
Declaration Of Kathleen Quigley, ¶¶ 4-9; Program Statement
1351.05 at 26.  Under the applicable program statement:

> A request for "my records," "all my records," or
> similar wording shall be interpreted as a request for a
> copy of Inmate Central File records and Medical File
> records currently maintained at the inmate's
> institution of confinement or, in the case of former
> inmates, in the last institution of confinement.

Program Statement 1351.05 at 26.[1]

Under these circumstances, BOP has now described its efforts
to search for responsive documents and the basis for its

---

[1]  The Program Statement was available within the prisoner's
institutional law library.  See 28 C.F.R. 543.10; Program
Statement 1315.07 at 4 and its Attachment A at 2, Attachment B at
2, Attachment C at 2 (available on www.bop.gov).

conclusion that "[t]he Bureau of Prisons conducted a systematic search by having USP Canaan staff forward a complete copy of Plaintiff's entire central and medical files. . . ." and that "all files likely to contain records responsive to Plaintiff's request were searched."  Declaration of Kathleen Quigley, ¶ 7; see also Supplemental Declaration Of Kathleen Quigley, ¶¶ .

### Failure To Exhaust His Administrative Remedies

BOP (and the FBI and USMS) also moved for dismissal of the claims against these components of the Department of Justice ("DOJ") due to Plaintiff's failure to satisfy his obligations to pay for the documents received from the Executive Office for United States Attorneys ("EOUSA"), another component of the Department of Justice.  This Court concluded that it was not prepared to grant judgment in favor of the FBI, BOP and USMS on this basis, where their supporting declarations did not earlier rely on the failure to make the payment to EOUSA.  This Court wrote as follows: "Absent controlling authority for such agency-wide application of regulations for aggregating requests and fees, the Court rejects defendants' arguments."  March 17, 2008 Mem. Op. at 12 n.6; Banks v. Department of Justice, 538 F.Supp.2d at 237 n.6.

Counsel for Defendants has been unable to identify any Supreme Court or D.C. Circuit cases addressing this point.  Nevertheless, a more exacting review of the language of the

-3-

applicable Department of Justice regulations themselves reveals
that those regulations must be read to include instances where a
FOIA requester refuses to make payments owed to another component
of the Department of Justice.  Thus, Defendants submit that the
Court's application of those regulations to EOUSA should be
extended to the remaining DOJ components.  See March 17, 2008
Mem. Op. at 8-12 n.6; Banks v. Department of Justice, 538
F.Supp.2d at 237 n.6.

The FOIA itself requires agencies to establish fee
schedules.  See 5 U.S.C. § 552(a)(4)(A)(i).  Under DOJ
regulations, "where a requester has previously failed to pay a
properly charged FOIA fee to any component or agency within 30
days of the date of billing, a component may require the
requester to pay the full amount due, plus any applicable
interest, and to make an advance payment of the full amount of
any anticipated fee, before the component begins to process a new
request or continues to process a pending request from the
requester."  See 28 C.F.R. § 16.11(i)(3) (emphasis added); 5
U.S.C. § 552(a)(4)(A)(v).[2]

---

[2]  As noted in Defendants' earlier filing, an agency may require
payment of fees even if the FOIA request has become the subject
of litigation.  See, e.g., Trueblood v. U.S. Dept. of Treasury,
IRS, 943 F. Supp. 64, 68 (D.D.C. 1996) (failure to pay fees is a
jurisdictional defense that can be raised at any time); see also
Pollack v. Department of Justice, 49 F.3d 115, 117, 119-20 (4th
Cir. 1995) ("we affirm the district court's judgment [for DOJ]
because Pollack refused to pay the required fees for search and
duplicating costs or to obtain a waiver of that requirement");

Here, there is no dispute that Mr. Banks has failed to pay the amount due under the FOIA as a result of the fees incurred in his request to EOUSA.  <u>See</u> <u>Banks</u> v. <u>Department of Justice</u>, 538 F.Supp.2d at 232, 235-37.  What remains is to assess whether DOJ regulations are intended to permit the BOP or FBI to require payment to EOUSA before continuing to process the requests to BOP and FBI.  This, requires an analysis of what constitutes "any component" within the meaning of the DOJ regulations.  <u>See</u> 28 C.F.R. § 16.11(i)(3).  The answer lies in another section of those regulations: "As used in this subpart [including Sections 16.1-16.12], *component* means each separate bureau, office, board, division, commission, service, or administration of the Department of Justice."  28 C.F.R. § 16.1(b).  The BOP and FBI (as well as the United States Marshals Service) are Bureaus of the Department of Justice.  <u>See</u> 28 C.F.R. § 0.1.  Thus, BOP and FBI, as DOJ components, "may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before [they] continue[] to process a pending request from [Plaintiff]."  <u>See</u> 28 C.F.R. § 16.11(i)(3).

<u>Keen</u> v. <u>Federal Bureau of Investigation</u>, Civil Action No. 98-2658 HHK, 2006 WL 2844908 (D.D.C. Sept. 29, 2006).

For these reasons, the Court should reconsider the conclusion reached in footnote 6 of its earlier memorandum opinion and otherwise grant this Renewed Motion To Dismiss Or, In The Alternative, For Summary Judgment.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAMPIRE NATION and FREDERICK BANKS,)
                                   )
        Plaintiff,                 )
                                   )
    v.                             ) Civil Action No. 06-1950 EGS
                                   )
DEPARTMENT OF JUSTICE, et al.,     )
                                   )
        Defendants.                )
_____)

SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE

    Pursuant to Local Rule 7(h), the defendants hereby submit
the following supplemental statement of material facts as to
which there is no genuine issue.

    1.  The Bureau of Prisons conducted its search for
responsive records as described in the Supplemental Declaration
of Kathleen Quigley, dated April 30, 2008, and consistent with
the Bureau of Prisons' practice as announced in its relevant
program statements.  See Supplemental Declaration of Kathleen
Quigley, 2-5; BOP Program Statement 1351.05 at 26; Program
Statement 1315.07 at 4, 26 and its Attachment A at 2, Attachment

B at 2, Attachment C at 2 (available on www.bop.gov); 28 C.F.R. 543.10.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

- 2 -

CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that service of the foregoing Renewed

Motion To Dismiss Or, In The Alternative, For Summary Judgment,

and a proposed Order has been made by mailing copies thereof to:

FREDERICK BANKS
No. 05711-068
PO Box 999
Butner, NC  27509

on the 1st day of May, 2008.

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

Vampire Nation
    Plaintiff,

Frederick Banks
    Plaintiff,

      v.

Bureau of Prisons,
    Defendant,

        Civil No. 1:06-CV-01950-EGS

SUPPLEMENTAL DECLARATION OF KATHLEEN QUIGLEY

I, Kathleen Quigley, under penalty of perjury do hereby declare, certify and state :

    1.   During the relevant time period, I was the Paralegal Specialist Trainee for the Federal Bureau of Prisons (hereinafter BOP), Northeast Regional Office, Philadelphia, Pennsylvania.  As part of my official duties, I was responsible for responding to Freedom of Information Act requests made to the BOP for records maintained in the Northeast Region.  I had access to and am responsible for maintaining the Freedom of Information Act and Privacy Act (hereinafter FOIA/PA) files for requests processed in this office.

    2.   I have reviewed the March 17, 2008, Memorandum Opinion issued by the Court is the above-captioned matter.  Specifically,

on pages 13 and 14, the Court discusses the three FOIA requests
submitted by Frederick Banks, Register Number 05711-068, who is
currently incarcerated at the Federal Correctional Institution,
Yazoo City, Mississippi, and Vampire Nation.  The Court concluded
the BOP did not demonstrate that it had conducted a reasonable
search for records responsive to the Plaintiff's request, noting
that the BOP declaration had failed to identify how or where the
records were located.

3.   Official records maintained in this office reflect that
Plaintiff Frederick Banks made three requests under the FOIA/PA,
for copies of records.   Plaintiff Vampire Nation did not file
any FOIA/PA requests to the Bureau of Prisons.

4.   The first request from the Plaintiff, Frederick Banks,
was assigned Request Number 2006-00951 in which the Plaintiff
requested all records maintained by the BOP regarding Plaintiff.
This type of broad request is routinely interpreted as seeking
records maintained in an inmate's Central and Medical Files,
because those systems of records are the likely places to locate
any records regarding an inmate, which Mr. Banks purported to be.
Attached as Exhibit 1 is the BOP's Program Statement on Inmate
Central files that outlines the records maintained in a Central
file and the national policy on FOIA/Privacy Act Requests as
specifically outlined in Program Statement No. 1351.05, Release of
Information.  Furthermore, an inmate's Central File is maintained

at the location of the incarcerated inmate.  If the inmate is either away from his designated institution or released, the Central File remains at the last designated institution until it is transferred to the National Archives.  In this case, the Plaintiff's Central and Medical Files were at the United States Penitentiary (USP) Canaan, Waymart, Pennsylvania at the time a search was to be conducted, even though the Plaintiff was on federal writ at that time.  As such, a request was sent to USP Canaan where the Central and Medical Files were located and copied.  This was done between mid-November and early December 2005.

5.    The Bureau of Prisons, thus, conducted a systematic search by having USP Canaan staff forward a complete copy of Plaintiff's entire Central and Medical Files.  I have reviewed the above-referenced FOIA Request file and affirm that all files likely to contain records responsive to the Plaintiff's request were searched.

6.    Upon review of the Plaintiff's appeal to the Office of Information and Privacy, it is not possible to determine what, if any, other specific records he is seeking as his only challenge is to the "improper holding of agency records" and a claim that the "exemptions cited cannot be enacted".

7.    Plaintiff Frederick Banks' second request was assigned Request Number 2006-06384.  A review of the request reveals the Plaintiff requested all database records maintained by the BOP regarding Plaintiff.  The BOP utilizes the Sentry database as its tracking and information system for inmate-related information. As such, I performed a number of database search functions that provides a printout of all inmate related information on Sentry. Plaintiff was informed that he would receive twenty-three pages in their entirety.  I have reviewed the above-referenced FOIA Request file and affirm that the Sentry database was searched and Plaintiff was provided with the requested records.

8.    Plaintiff Frederick Banks' third request was assigned Request Number 2006-07658.  Plaintiff requested all central file records maintained by the BOP regarding Plaintiff.

9.    According to the FOIA/PA database, by letter dated June 28, 2006, Central Office FOIA/PA Section informed Plaintiff he may seek a local review of his central file by contacting staff at USP Canaan to make arrangements for review.  This is consistent with the BOP's national policy on FOIA/Privacy Act Requests as specifically outlined on in Program Statement No. 1351.05, Release of Information.  Copy is attached as Exhibit 2.

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2008.

Kathleen Quigley
Federal Bureau of Prisons
Philadelphia, Pennsylvania



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 1351.05
**DATE:** 9/19/2002
**SUBJECT:** Release of Information

PART ONE: [GENERAL PROVISIONS AND PROCEDURES]

1. **[PURPOSE AND SCOPE § 513.30. This subpart establishes procedures for the release of requested records in possession of the Federal Bureau of Prisons ("Bureau"). It is intended to implement provisions of the Freedom of Information Act (FOIA), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a, and to supplement Department of Justice (DOJ) regulations concerning the production or disclosure of records or information, 28 CFR part 16.]**

The Freedom of Information Act (FOIA) and the Privacy Act (PA) interact with each other in two areas:

- When any person requests access to records about himself or herself, both statutes become potentially applicable;

- When any person requests access to another individual's record through the FOIA, the Privacy Act may prohibit the disclosure of that record unless FOIA requires it.

The determination of what information may be released requires Bureau staff to have a basic understanding of both the FOIA and the Privacy Act, as well as a working knowledge of DOJ and Bureau policy. Bureau staff also should be aware that the Privacy Act establishes criminal penalties and civil liabilities for unauthorized disclosures. The appropriate Regional Counsel shall be contacted when staff are uncertain whether requested information may be disclosed.

Staff shall become familiar with the policy governing release of information, with special emphasis upon those areas with direct application to the employee's job.

Information requests submitted by the union pursuant to 5 U.S.C. § 7114 will be addressed in accordance with this provision and relevant case law.

**[Bold Type - Rules]**
Regular Type - Implementing Information

This Program Statement is divided into four major parts:

| Part | Page |
|------|------|
| General Provisions and Procedures | 1 |
| Inmate Requests to Institution for Information | 12 |
| Privacy Act Requests for Information | 21 |
| Freedom of Information Act Requests for Information | 25 |

2. **SUMMARY OF CHANGES.**  This Program Statement is being revised to prohibit inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s) in a Criminal Case.  The purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes.  Inmates will be permitted to review their PSRs and SORs, but cannot obtain or possess photocopies.  This revision also introduces a new form which inmates can use to facilitate court review of their PSRs or SORs.

If local procedures are changed, notification to the union and training will be handled in accordance with the Master Agreement.

3. **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.  Information will be released to a requester in accordance with Federal law and the regulations and policies of the U.S. Department of Justice.

   b.  Inmate Freedom of Information Act requests to the Central Office will be reduced by increasing the use of institution procedures that provide for inmate review of Bureau policy documents and records in Inmate Central Files.

   c.  Future litigation pertaining to FOIA/Privacy Act issues will be reduced.

4. **DIRECTIVES AFFECTED**

   a.  **Directive Rescinded**

      PS 1351.04     Release of Information (12/5/96)

   b.  **Directives Referenced**

      PS 1330.13     Administrative Remedy Program (12/22/95)
      PS 1480.05     Contacts with News Media (9/21/00)
      PS 5070.10     Judicial Recommendations and U.S. Attorney Reports, Responses to (6/30/97)

      PS 5270.07        Inmate Discipline and Special Housing Units
                        (12/29/87)
      PS 5310.12        Psychology Services Manual (8/13/93)
      PS 5800.10        Mail Management Manual (11/3/95)
      PS 5800.11        Inmate Central File, Privacy Folder and
                        Parole Mini- Files (9/8/97)
      PS 6000.05        Health Services Manual (9/15/96)

      Public Information Officer's Handbook (1994)

   c.  Bureau rules cited in this Program Statement are contained
in 28 CFR 513.30 through 68.

   d.  Other rules referenced in this Program Statement are
contained in 5 CFR part 297 and 28 CFR parts 16 and 301.

   e.  United States Code sections cited in this Program Statement
are contained in 5 U.S.C. 301, 552 and 552a; 13 U.S.C.;
18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082, 5006, 5024;
28 U.S.C. 509, 510; and 31 U.S.C. 3711(f).

   f.  Privacy Act Issuances, 1991 Comp., Volume II.

   g.  United States Department of Justice et al. v. Julian
       et al., 108 S.Ct. 1606 (1988).

5.  **STANDARDS REFERENCED**

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4020, 3-4095, and 3-4096

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-1E-04, 1E-05

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-1E-06, 1E-07, and
1E-08

6.  **[LIMITATIONS § 513.31**

   **a.  Social Security Numbers.  As of September 27, 1975, Social
Security Numbers may not be used in their entirety as a method of
identification for any Bureau record system, unless such use is
authorized by statute or by regulation adopted prior to January
1, 1975.**

   **b.  Employee Records.  Access and amendment of employee
personnel records under the Privacy Act are governed by Office of
Personnel Management regulations published in 5 CFR part 297 and
by Department of Justice regulations published in 28 CFR part
16.]**

7.  **[GUIDELINES FOR DISCLOSURE § 513.32]**

a.  **[The Bureau provides for the disclosure of agency information pursuant to applicable laws, e.g. the Freedom of Information Act (5 U.S.C. 552), and the Privacy Act (5 U.S.C. 552a).]**

b.  Pursuant to 28 CFR part 16, the authority to release or deny access to records and information is limited to the Director or his or her designee.

c.  Bureau staff shall release a Bureau record in response to a request made in accordance with this rule, unless a valid legal exemption to disclosure is asserted.

- Bureau staff may assert any applicable exemption to disclosure which is provided under the FOIA in 5 U.S.C. § 552(b) or under the Privacy Act in 5 U.S.C. § 552a.

- For a listing of general FOIA Exemptions, see the **Exemptions to Disclosure Provided in the Freedom of Information Act (Attachment A).**

- For a listing of Bureau systems of records which the Attorney General has exempted from access and disclosure under the Privacy Act, see 28 CFR 16.97.

Questions regarding the applicability of exemptions may be referred to the appropriate Regional Counsel or to the Office of General Counsel.

d.  Examples of documents or information which ordinarily may be withheld from disclosure include the examples which follow. These examples are not intended to represent an all-inclusive list of every situation when FOIA exemptions may apply, nor are the FOIA exemptions cited for each example the only ones which may apply to the examples provided.

(1)  Documents or information which could reasonably be expected to constitute an unwarranted invasion of personal privacy, i.e. information that is not "public information."

- For the applicable FOIA exemptions, see Exemptions 6 and 7 in Attachment A.

- Information concerning an individual inmate is not generally available to FOIA requesters unless the inmate whose records are being sought has given a written consent to the disclosure or unless the

PS 1351.05
9/19/2002
Page 5

information has been determined to constitute "public information."  For guidance on what constitutes "public information," see **Public Information (Attachment B)**.

- Requests by one inmate for public information concerning other inmates must be reviewed very carefully, as prison security concerns may outweigh the right to a FOIA disclosure.

- A denial of such public information to an inmate requester may be done only with the Regional Counsel's approval, after assessing the risks that disclosure might pose to the safety of the inmate(s) whose records are being sought and to other inmates and staff in the institution.  See Section 7.d.(2), below.  A high risk of gang-related prison violence is an example of a prison security concern which might justify the withholding of public information about one inmate to another inmate while in custody.

(2)  Documents or information which would reveal sources of information obtained through a legitimate expectation of confidentiality or which would otherwise endanger the life or physical safety of any person.

- For the applicable FOIA exemptions, see Exemptions 6 and 7 in Attachment A.

- An example is a statement of an inmate witness made in the context of a current or a completed disciplinary, criminal, or accident investigation.  This statement shall not be disclosed to another inmate if such disclosure would endanger the inmate witness.

(3)  Documents or information which could disrupt an inmate's institutional program due to the diagnostic or evaluative opinions contained in the document, and which would likely provoke adjustment difficulties or aggravate existing adjustment difficulties.

- For the applicable FOIA exemptions, see Exemptions 5 and 6 in Attachment A.

(4)  Documents or information which would interfere with ongoing law enforcement proceedings, including administrative investigations.

- For the applicable FOIA exemptions, see Exemptions 5 and 7 in Attachment A.

- While certain investigative information might be disclosed **after** an administrative investigation is completed, particular care must be exercised regarding disclosure during the course of the investigation. Even after the investigation is completed, personal safety and prison security concerns may outweigh the right to a FOIA disclosure.

- Only the institution staff member the Warden designates as the institution's Public Information Officer is authorized to make public statements regarding any investigation.  For further guidance, see the Program Statement on Contacts with the News Media and the Public Information Officer's Handbook.

Questions regarding criminal prosecutions, such as the status of a case, shall be referred to the appropriate U.S. Attorney.

(5)  Documents or information which, through disclosure of law enforcement techniques, information, or procedures, could reasonably be expected to enable the requester to violate a law, or to threaten the security of a Bureau institution or the safety of any person.

- For the applicable FOIA exemptions, see Exemptions 2 and 7 in Attachment A.

- Some Program Statements and Operations Memoranda, and other documents such as post orders, construction diagrams, etc., may be exempted because disclosing them would pose a threat to institutional security.  This may also apply to information contained in investigations and other Bureau reports where law enforcement techniques are described.

8.  **[PRODUCTION OF RECORDS IN COURT § 513.33.  Bureau records are often sought by subpoena, court order, or other court demand, in connection with court proceedings.  The Attorney General has directed that these records may not be produced in court without the approval of the Attorney General or his or her designee.  The guidelines are set forth in 28 CFR part 16, subpart B.]**

Bureau staff who receive such demands shall consult with their Regional Counsel or the Office of General Counsel for advice regarding proper handling of the demand.

9.  **[PROTECTION OF INDIVIDUAL PRIVACY - DISCLOSURE OF RECORDS TO THIRD PARTIES § 513.34.]**  Bureau employees must carefully maintain and process all information concerning individuals to ensure that information is accurate, relevant, and timely, and to ensure that no inadvertent disclosure of information is made.

PS 1351.05
9/19/2002
Page 7

**[a. Information that concerns an individual and is contained in a system of records maintained by the Bureau shall not be disclosed to any person, or to another agency, except under the provisions of the Privacy Act, 5 U.S.C. 552a, or the Freedom of Information Act, 5 U.S.C. 552, and Departmental regulations.]**

Staff may disclose information from a Bureau system of records only if one or more of the following criteria apply:

(1)  With the written consent of the individual to whom the record pertains.  The Release of Information Consent form (BP-S192.013) may be used;

(2)  To employees of the DOJ who have a need for the record in the performance of their duties;

(3)  If disclosure is permitted under the FOIA, 5 U.S.C. § 552, e.g. "public information", when the public interest in disclosure of the information outweighs the privacy interest involved;

- For guidance on what constitutes "public information," see Attachment B.

(4)  For a **routine use** described in the DOJ "Notice of Record System" for the system of records which contains the information, as published in the Federal Register.

- For a list of the Bureau's systems of records that have been published in the Federal Register, see the **Bureau Systems of Records (Attachment C),** as updated in BOPDOCS.

- The published notices for these systems describe the records contained in each system and the routine uses for disclosing these records without obtaining the consent of the person to whom the records pertain.  For copies of the published systems notices, see BOPDOCS and/or contact the FOIA/PA section of the Office of General Counsel.

A **list of routine uses** for records contained in the Inmate Central File is also contained in the Program Statement concerning Central File, Privacy Folder, and Parole Mini-Files.

Routine uses for Bureau systems of records may include the following:

(a)  To Federal, state, local and foreign law enforcement officials for law enforcement purposes such as investigations, possible criminal prosecutions, civil court actions, or administrative and regulatory proceedings.

PS 1351.05
9/19/2002
Page 8

**Law Enforcement requests for telephone monitoring information:**

- For telephone monitoring information concerning inmate telephone calls, ordinarily only transactional data (e.g. date, time, duration of the call) shall be disclosed without proper process, even to other DOJ law enforcement agencies.

- Copies of the recorded telephone conversations, or written transcripts, shall only be disclosed to a requesting law enforcement agency when:

  (1)  requested in an emergency situation;

  (2)  criminal activity is discovered as part of the routine monitoring for prison administration purposes; or

  (3)  requested through proper process (e.g. grand jury subpoena, administrative subpoena).

- All requests by law enforcement agencies for access to recordings of inmate telephone conversations shall be referred to Regional Counsel.

(b)  To the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of Title 13, United States Code;

(c)  To a recipient who has provided the Bureau with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(d)  To the National Archives and Records Administration (NARA) as a record which has sufficient historical or other value to warrant its continued preservation by the U.S. Government, or for evaluation by the Administrator of the General Services Administration or his or her designee to determine whether the record has such value;

(e)  To either House of the U.S. Congress, or, to the extent of a matter within its jurisdiction, any Congressional committee or subcommittee, any joint committee of Congress or subcommittee of any such joint committee;

PS 1351.05
9/19/2002
Page 9

**Congressional requests on behalf of constituents for information about inmates:**

- Responses to individual members of Congress requesting information on behalf of a constituent are limited to public information unless staff have first obtained the inmate's express or implied consent to provide a fuller response.

- Written consent from the inmate shall be obtained when practical, using the form BP-S192.013.  When this is not practical, staff should consider whether there is implied consent by the inmate.  An example of implied consent is a Congressional inquiry which resulted from a letter the inmate sent to the member of Congress and this letter is included with the request from the member of Congress.

- Implied consent may not be inferred when a third party (for example, the inmate's spouse or parents) initiated the Congressional request for information.  In such a situation, only public information (see Attachment B) may be released to the member of Congress without the inmate's written consent.

     Questions regarding appropriate responses to Congressional inquiries shall be directed to the appropriate Regional Counsel or to staff in the FOIA/PA Section of the Office of General Counsel.

     (f)  Pursuant to an order of a court of competent jurisdiction;

     (g)  To a requester from appropriate state offices (e.g., state department of corrections, parole board, attorney general) seeking access to records concerning state inmates in Bureau custody.

- Although state inmates are confined in Bureau institutions, they remain state prisoners.  A state inmate may receive periodic visits from state correctional and parole officials to review and evaluate his or her status, parole eligibility, and release readiness.  To accomplish those purposes, state officials require access to the files of state inmates.

•   Wardens shall ensure that officials of such state
    offices, who need to review the records, are
    provided, upon request, access to the complete
    record of a state inmate in a Bureau institution.

(5)  **Records Concerning Former Youth Corrections Act (YCA)
Inmates.**  Information on former YCA inmates, including the fact
that the person has been confined, shall not be released without
Regional Counsel review to determine whether the conviction has
been expunged and whether disclosure is appropriate.

**[b. Lists of Bureau inmates shall not be disclosed.]**

Any request for such lists shall be forwarded to the Office of
General Counsel, Central Office.

c.  A list of Bureau employees may be generally releasable.
Questions shall be directed to the appropriate Regional Counsel
or to the FOIA/PA Section of the Office of General Counsel.

10.  **[<u>ACCOUNTING/NONACCOUNTING OF DISCLOSURES TO THIRD PARTIES</u>
§ 513.35.  Accounting/nonaccounting of disclosures to third
parties shall be made in accordance with Department of Justice
regulations contained in 28 CFR 16.52.]**

Except for disclosures of information to other DOJ employees, and
all components thereof, and except for disclosures required
under the FOIA (e.g., public information, as listed on Attachment B),
an accounting of disclosures to third parties of any information
concerning an individual contained in a Bureau system of records
will be made in accordance with the following guidelines:

a.  **Oral Disclosure**

(1)  Staff may orally release only public information.  When
public information is thus disclosed, no accounting is necessary.

•   Only in an emergency shall staff orally release non-
    public information to parties other than DOJ employees.

•   Before such an emergency oral disclosure is made, staff
    shall contact Regional Counsel or the FOIA/PA
    Administrator.  If this is not possible, staff shall
    inform the Regional Counsel, or the FOIA/PA
    Administrator at the Central Office as soon as
    practicable after the disclosure.

(2)  Upon oral disclosure of non-public information, a
memorandum shall be prepared and retained in the file from which
the record is disclosed, or an appropriate notation shall be
maintained in the file, attached to the record disclosed.

PS 1351.05
9/19/2002
Page 11

This memorandum or notation shall include the following information:

- the date of the disclosure,
- the name and address of the person to whom the record was disclosed and the name of the agency that person represents, if any,
- the purpose of the request for disclosure; and
- identification of the specific record disclosed.

For a form designed to assist staff receiving an oral request for information, see the Record Of Information Release form (BP-S171.013).

b. **Written Disclosures.**  Accounting for a written disclosure may be made by:

(1)  Retaining a copy of the correspondence requesting the information and a copy of the response in the file from which the records are disclosed;

(2)  Following the procedure for an accounting of an oral disclosure, as described in Section 10.a., above; or

(3)  Developing another method if the method provides, at a minimum, the following information:

- the date of the disclosure;
- the name and address of the person to whom the record was disclosed and the agency that person represents, if any;
- the purpose of the request for disclosure; and
- a general description of the specific record disclosed.

c. **Disclosure Record Maintenance.**  It is the responsibility of the staff member making a disclosure of non-public information to provide an accurate accounting of that disclosure.

- Accounting records of the disclosure of non-public information shall be maintained for five years or until the record is destroyed, whichever is longer, and will be placed in the privacy folder.

- When records are transferred to the NARA for storage, the disclosure accounting pertaining to those records, other than correspondence, shall be transferred with the records themselves.

- An exemption under 5 U.S.C. § 552a(j) **does not** relieve the Bureau from the responsibility to account for all disclosures other than those within the DOJ or under the FOIA.

11. **[GOVERNMENT CONTRACTORS** § 513.36

   **a.  No Bureau component may contract for the operation of a record system by or on behalf of the Bureau without the express written approval of the Director or the Director's designee.**

   **b.  Any contract which is approved shall contain the standard contract requirements promulgated by the General Services Administration (GSA) to ensure compliance with the requirements imposed by the Privacy Act.  The contracting component shall have the responsibility to ensure that the contractor complies with the contract requirements relating to privacy.**

PART TWO: **[INMATE REQUESTS TO INSTITUTION FOR INFORMATION]**

12.  **[INMATE ACCESS TO INMATE CENTRAL FILE** § 513.40.  Inmates are encouraged to use the simple access procedures described in this section to review disclosable records maintained in his or her Inmate Central File, rather than the FOIA procedures described in §§ 513.60 through 513.68 of this subpart.  Disclosable records in the Inmate Central File include, but are not limited to, documents relating to the inmate's sentence, detainer, participation in Bureau programs such as the Inmate Financial Responsibility Program, classification data, parole information, mail, visits, property, conduct, work, release processing, and general correspondence.  This information is available without filing a FOIA request.  If any information]** (in the disclosable section) **[is withheld from the inmate, staff will provide the inmate with a general description of that information and also will notify the inmate that he or she may file a FOIA request.**

   **a.  Inmate Review of His or Her Inmate Central File**.  **An inmate may at any time request to review all disclosable portions of his or her Inmate Central File by submitting a request to a staff member designated by the Warden.  Staff are to acknowledge the request and schedule the inmate, as promptly as is practical, for a review of the file at a time which will not disrupt institution operations.]**

Further guidance is contained in the Program Statement on Central File, Privacy Folder, and Parole Mini-Files.

When an inmate makes a request to institution staff to review his or her Inmate Central File, he or she shall be advised to make arrangements pursuant to local procedures.

   • Because local processing reduces unnecessary FOIA requests, staff shall advise an inmate to make a request for Inmate Central File records to the FOIA/PA Section of the Office of General Counsel **only** when the inmate wishes to review exempt information.

PS 1351.05
9/19/2002
Page 13

- Staff shall not discuss with the inmate the types or nature of nondisclosable documents maintained in his or her Privacy Folder.

Before any document in the Inmate Central File is disclosed to the inmate to whom the documents pertain, or to a third party with the prior written consent of the inmate, the following review shall take place:

(1) **Bureau Documents**. If the document is a Bureau document (generated by Bureau staff) and is not a court-ordered study, staff are to determine whether the document should be withheld from disclosure under Section 7 of this Program Statement and further guidance set forth below.

- Staff shall place in the inmate's Privacy Folder any document that is to be withheld from disclosure.

- Staff shall place all other documents in the disclosable portion of the Inmate Central File, which is all of the Inmate Central File except for the Privacy Folder.

Guidelines for some specific Bureau documents are provided below:

(a) **Progress Reports**. All Progress Reports prepared:

- After October 15, 1974, are subject to release and are to be placed in the disclosable section of the Inmate Central File.

- Between February 15 and October 15, 1974, are subject to release except for the recommendation section, which shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

- Before February 15, 1974, shall be reviewed for disclosure in accord with Section 7 of this Program Statement.

(b) **Psychiatric Reports**

- A psychiatric report written at the request of the U.S. Parole Commission is subject to release and shall be placed in the disclosable section of the Inmate Central File. This report should be written in non-technical language so that it can be understood by non-professionals.

- Other psychiatric, psychological, or evaluative
  reports Bureau staff prepared may also be made
  available to the U.S. Parole Commission and shall
  be inserted in the Privacy Folder.  A summary of
  the document must be placed in the Inmate Central
  File.  The summary may be placed in the Progress
  Report prepared in connection with the inmate's
  parole hearing.  The summary shall be sufficiently
  detailed to permit the inmate to respond, at the
  Parole Hearing, to the substance of the withheld
  information.

(c)  **Medical Records.**  See Section 14 of this Program
Statement.

(d)  **Discipline Records.**  Discipline records, such as Unit
Discipline Committee (UDC) and Discipline Hearing Officer (DHO)
packets (including the UDC/DHO report, incident report, notice of
hearing, list of inmate rights at UDC/DHO hearing, notice of
placement in Administrative Detention, and investigative
memoranda), shall be maintained together in the Privacy Folder
only if a portion of an investigation or other discipline record
contains non-disclosable materials.  Copies of all releasable
documents shall be placed together in the disclosable section of
the Inmate Central File.

(2)  **Non-Bureau Documents**

(a)  **FBI/National Crime Information Center (NCIC)
Information.**  The NCIC prohibits the Bureau from disclosing NCIC
identification records to an inmate.

Procedures for an inmate to request a copy of his or her
FBI/NCIC identification record directly from the FBI are
contained in 28 CFR 513.10 through 513.12.

(b)  **Documents from Other Federal Agencies.**  If a document
originates in another Federal agency (including other components
of the Department of Justice), it shall be placed in the Privacy
Folder, except as provided in section 12, first paragraph
(28 CFR 513.40).

When a request for records includes a document from
another Federal agency, the document shall be referred to the
originating Federal agency for a determination of its
releasability (see Attachment D for a suggested format to request
disclosure instructions from the originating agency).  For
documents originating from Federal courts or probation offices,
see subsection (d) below.

PS 1351.05
9/19/2002
Page 15

(c) **Documents from Non-Federal Agencies.** If a document has been received from a source outside the Federal government (e.g., a state agency), it shall be placed in the Privacy Folder, except as provided in section 12, first paragraph (28 CFR 513.40).

When a request for records includes a document from a non-Federal agency, Bureau staff must make a determination of its releasability in consultation with the non-Federal organization (see Attachment D). If the originating non-Federal agency recommends non-disclosure, and Bureau staff determine that non-disclosure is appropriate under 28 CFR 513.32, staff shall document the rationale for non-disclosure and place the document in the Privacy Folder.

(d) **Documents from Federal Courts and Probation Offices**

(1) **Federal Presentence Reports (PSR) and Statements of Reasons (SOR) from Judgments in Criminal Cases. For safety and security reasons, inmates are prohibited from obtaining or possessing photocopies of their PSRs, SORs, or other equivalent non-U.S. Code sentencing documents (e.g., D.C., state, foreign, military, etc.).** Inmates violating this provision are subject to disciplinary action.

This prohibition applies only to the SOR portion of an inmate's Judgment in a Criminal Case. The rest of the Judgment document remains releasable unless circumstances or policy dictate otherwise. PSRs and SORs received by mail will be treated as contraband, and handled according to the Mail Management Manual.

This prohibition does not apply to inmates in Bureau of Prisons custody with a need to review their PSRs prior to sentencing. For example, a pretrial inmate scheduled for sentencing may possess and review the PSR in preparation for sentencing. After sentencing, however, the inmate is prohibited from retaining a copy of the PSR.

The Bureau implemented this policy for the following reasons.

- Many PSRs and SORs contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.

- The Bureau has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs and SORs to learn if they are informants, gang members, have financial resources, etc.

PS 1351.05
9/19/2002
Page 16

■     Inmates who refuse to provide the documents
are threatened, assaulted, and/or seek
protective custody.  Likewise, inmates
providing PSRs and SORs containing harmful
information are faced with the same risks of
harm.

Inmates needing a copy of their PSRs or SORs for filing
as an attachment in a court case may obtain, complete, and submit
to the court an Inmate Request For Certification or Judicial
Notice of Pre-sentence Report and/or Statement of Reasons form
(BP-S757.013).  The form, which includes instructions for
completion, must be available to inmates in the housing units and
law libraries.

Although prohibited from obtaining or possessing
photocopies, federal inmates are entitled under the FOIA to
access their own PSRs (see United States Department of Justice v.
Julian, 486 U.S. 1 (1988)) and SORs.  Inmates must be provided
reasonable opportunities to access and review their PSRs, SORs,
or other equivalent non-U.S. Code sentencing documents (e.g.,
D.C., state, foreign, military, etc.).  Inmates are responsible
for requesting an opportunity to access and review these records
with unit staff in accordance with the Program Statement on
Inmate Central File, Privacy Folder, and Parole Mini-Files. **To
facilitate inmate access and review, PSRs and SORs should
ordinarily be maintained in the disclosable portion of the
central file unless significant safety and security concerns
dictate otherwise.**

In addition to the above procedures, other provisions
of the FOIA may require limiting inmate access to PSRs and SORs.
Third party requests for inmate PSRs and SORs should be handled
according to Section 29 of this Program Statement.

Staff must maintain PSRs as follows:

●     A PSR prepared **on or after December 1, 1975,**
is to be placed in the disclosable portion of
the Inmate Central File.

●     A PSR prepared **before December 1, 1975,** is to
be returned to the sentencing court with a
cover letter indicating that the PSR is being
returned based on the Supreme Court's
decision in Julian and the fact that the PSR
was not prepared with the expectation of
release.  No copy of the returned PSR is to
be maintained at the institution, although
relevant material from the PSR may be
incorporated into other documents.

- Documents which the sentencing court has sealed or otherwise labeled as not disclosable to the inmate must be placed in the privacy folder.  Questions regarding such documents should be referred to the Regional Counsel.

(2)  **Documents Other than Federal PSIs.**  Generally, documents originating in a Federal court or probation office shall be placed in the Privacy Folder if the documents are clearly marked to indicate that disclosure to the inmate is unadvisable.  Other documents, such as a court-ordered study the Bureau prepared, shall be referred to the requesting court for that court's instructions as to disclosure.  A copy of the document shall be maintained in the Privacy Folder until a final determination is made regarding its disclosure.

When Bureau staff reclassify a document from non-disclosable to disclosable, subsequent to any information request encompassing that document, staff shall place the reclassified document in the disclosable section of the Inmate Central File.

**[b.  Procedures for Inmate Review of His or Her Inmate Central File.**

**(1)  Prior to the inmate's review of the file, staff are to remove the Privacy Folder which contains documents withheld from disclosure pursuant to § 513.32.**

**(2)  During the file review, the inmate is to be under direct and constant supervision by staff.  The staff member monitoring the review shall enter the date of the inmate's file review on the Inmate Activity Record and initial the entry. Staff shall ask the inmate to initial the entry also, and if the inmate refuses to do so, shall enter a notation to that effect.**

**(3)  Staff shall advise the inmate if there are documents withheld from disclosure and, if so, shall advise the inmate of the inmate's right under the provisions of § 513.61 to make a FOIA request for the withheld documents.]**

28 CFR 513.32 refers to Section 7 of this Program Statement. 28 CFR 513.61 refers to Section 27 of this Program Statement. The Inmate Activity Record refers to form BP-381.

**13.  [INMATE ACCESS TO INMATE CENTRAL FILE IN CONNECTION WITH PAROLE HEARINGS § 513.41.  A parole-eligible inmate (an inmate who is currently serving a sentence for an offense committed prior to November 1, 1987) may review disclosable portions of the Inmate Central File prior to the inmate's parole hearing, under the general procedures set forth in § 513.40.  In addition, the following guidelines apply:]**

28 CFR 513.40 refers to Section 12 of this Program Statement.

   [a.  A parole-eligible inmate may request to review his or her
Inmate Central File by submitting the appropriate Parole
Commission form.  This form ordinarily shall be available to each
eligible inmate within five work days after a list of eligible
inmates is prepared.

   b.  Bureau staff ordinarily shall schedule an eligible inmate
for a requested Inmate Central File review within seven work days
of the request after the inmate has been scheduled for a parole
hearing.  A reasonable extension of time is permitted for
documents which have been provided (prior to the inmate's
request) to originating agencies for clearance, or which are
otherwise not available at the institution.

   c.  A report received from another agency which is determined
to be nondisclosable (see § 513.40 (b)) will be summarized by
that agency, in accordance with Parole Commission regulations.
Bureau staff shall place the summary in the appropriate
disclosable section of the Inmate Central File.  The original
report (or portion which is summarized in another document) will
be placed in the portion of the Privacy File for Joint Use by the
Bureau and the Parole Commission.

   d.  Bureau documents which are determined to be nondisclosable
to the inmate will be summarized for the inmate's review.  A copy
of the summary will be placed in the disclosable section of the
Inmate Central File.  The document from which the summary is
taken will be placed in the Joint Use Section of the Privacy
Folder.  Nondisclosable documents not summarized for the inmate's
review are not available to the Parole Commission and are placed
in a nondisclosable section of the Inmate Central File.

   e.  When no response regarding disclosure has been received
from an originating agency in time for inmate review prior to the
parole hearing, Bureau staff are to inform the Parole Commission
Hearing Examiner.]

14.  [INMATE ACCESS TO MEDICAL RECORDS § 513.42

   a.  Except for the limitations of paragraphs (c) and (d) of
this section, an inmate may review records from his or her
medical file (including dental records) by submitting a request
to a staff member designated by the Warden.]

   Disclosable Bureau medical records include the following:

   •    Medical and Related Data Sheets (BP-8), although this
        form has been discontinued, older files may still
        contain such records),
   •    Report of Medical History (SF-93 or BP-360),

- Report of Medical Examination (SF-88),
- Doctor's Orders (SF-508), and
- Medication Sheets (such as Medications and Treatments, PHS Form 2128, Supplement to SF-510).

[b.  **Laboratory Reports** which contain only scientific testing results and which contain no staff evaluation or opinion (such as Standard Form 514A, Urinalysis) are ordinarily disclosable.  Lab results of HIV testing may be reviewed by the inmate.  However, an inmate may not retain a copy of his or her test results while the inmate is confined in a Bureau facility or a Community Corrections Center.  A copy of an inmate's HIV test results may be forwarded to a third party outside the institution and chosen by the inmate, provided that the inmate gives written authorization for the disclosure.

c.  **Medical records** containing subjective evaluations and opinions of medical staff relating to the inmate's care and treatment will be provided to the inmate only after the staff review required by paragraph (d) of this section.  These records include, but are not limited to, outpatient notes, consultation reports, narrative summaries or reports by a specialist, operative reports by the physician, summaries by specialists as the result of laboratory analysis, or in-patient progress reports.

d.  **Prior to release to the inmate**, records described in paragraph (c) of this section shall be reviewed by staff to determine if the release of this information would present a harm to either the inmate or other individuals.  Any records determined not to present a harm will be released to the inmate at the conclusion of the review by staff.  If any records are determined by staff not to be releasable based upon the presence of harm, the inmate will be so advised in writing and provided the address of the agency component to which the inmate may address a formal request for the withheld records.  An accounting of any medical records will be maintained in the inmate's medical file.]

Release, review, and accounting of disclosures to inmates and former inmates shall be in accordance with the procedures in the Health Services Manual.

15.  [**INMATE ACCESS TO CERTAIN BUREAU PROGRAM STATEMENTS**
§ 513.43.  **Inmates are encouraged to use the simple local access procedures described in this section to review certain Bureau Program Statements, rather than the FOIA procedures described in Sections 513.60 through 513.68 of this Subpart.**

**a.  For a current Bureau Program Statement containing rules (regulations published in the Federal Register and codified in 28 CFR), local access is available through the institution law library.**

**b.  For a current Bureau Program Statement not containing rules (regulations published in the Federal Register and codified in 28 CFR), inmates may request that it be placed in the institution law library.  Placement of a requested Program Statement in the law library is within the discretion of the Warden, based upon local institution conditions.**

**c.  Inmates are responsible for the costs of making personal copies of any Program Statements maintained in the institution law library.  For copies of Program Statements obtained under the FOIA procedures described in Sections 513.60 through 513.68 of this Subpart, fees will be calculated in accordance with 28 CFR 16.10.]**

28 CFR 513.60 through 513.68 refers to Sections 26 through 34 of this Program Statement.

16.  **[FEES FOR COPIES OF INMATE CENTRAL FILE AND MEDICAL RECORDS § 513.44.  Within a reasonable time after a request, Bureau staff are to provide an inmate personal copies of requested disclosable documents maintained in the Inmate Central File and Medical Record.  Fees for the copies are to be calculated in accordance with 28 CFR § 16.10.]**

No fee shall be charged for the following:

- the first 100 pages of duplication (or its cost equivalent),
- the first two hours of search time (or its cost equivalent), or
- charges which total $8.00 or less.

The duplication cost is calculated by multiplying the number of pages in excess of 100 by $0.10, the current rate set in 28 CFR 16.10.

The cost for search time is calculated by multiplying the number of quarter hours in excess of two hours by the following rates set in 28 CFR 16.10 for the staff conducting the search:

- $2.25 per quarter hour for clerical staff,
- $4.50 per quarter hour for professional staff, and
- $7.50 per quarter hour for managerial personnel.

Only fees in excess of $8.00 shall be assessed.  This means that the total cost must be greater than $8.00, either for the cost of the search (for time in excess of two hours), for the cost of

duplication (for pages in excess of 100 pages), or for both costs combined.

**Examples:**

**Example 1:**   If a request is made for information contained on 181 pages and clerical staff were able to locate the documents in less than two hours, the requester would be charged $8.10 ($0.10 per page x 81).

**Example 2:**   If it takes two hours and 30 minutes for clerical personnel to locate the same 181 pages, the requester would be charged a total of $12.60 (a duplication fee of $8.10 plus a $4.50 search fee for the two quarter hours of time in excess of two hours, at $2.25 per quarter hour).

Fees for searches shall only be assessed with the authorization of the Regional Counsel or the FOIA/PA Administrator in the Office of General Counsel.  Requesters shall pay fees by check or money order payable to the Treasury of the United States.  Fees shall be forwarded to the office assessing the fees.

<u>PART THREE</u>: **[PRIVACY ACT REQUESTS FOR INFORMATION]**

17.  **[<u>PRIVACY ACT REQUESTS BY INMATES</u> § 513.50.  Because inmate records are exempt from disclosure under the Privacy Act, (see 28 CFR 16.97) inmate requests for records under the Privacy Act will be processed in accordance with the FOIA.  See §§ 513.61 through 513.68.]**

28 CFR 513.61 through 513.68 refers to Sections 27 through 34 of this Program Statement.

18.  **PRIVACY ACT REQUESTS BY EMPLOYEES OR FORMER EMPLOYEES.**  An employee or former employee may make a written request for access to documents in his or her Personnel File and/or other documents concerning the requester which are not contained in the employee's personnel file but which are maintained in a Bureau system of records.  Such a request is processed pursuant to the applicable provisions of the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552.

■  A written request should be submitted to:

        Director
        Federal Bureau of Prisons
        320 First Street NW
        Washington DC  20534

- The requester shall clearly mark on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and shall clearly describe the record sought, including the approximate date covered by the record.

- An employee making such a request must provide identification data, as listed in 28 CFR 16.41, and may use a Certification of Identity Form (DOJ-361) or self-sworn declaration.

19. **PRIVACY ACT REQUESTS ON BEHALF OF AN EMPLOYEE OR FORMER EMPLOYEE.** A request for records concerning an employee or former employee made by an authorized representative of that employee or former employee may be made by writing to the address above. Such requests shall be processed pursuant to the provisions of the Privacy Act.

- The request must be clearly marked on the face of the letter and on the envelope **"PRIVACY ACT REQUEST,"** and must describe the record sought, including the approximate dates covered by the record.

- Verification of the identity of the individual whose records are sought is required. See methods of verification listed in 28 CFR 16.41.

20. **ACKNOWLEDGMENT OF PRIVACY ACT REQUESTS.** Requests for records under the Privacy Act received by the FOIA/PA Administrator, Office of General Counsel, shall be reviewed and may be forwarded to the appropriate Regional Office for handling.

- Requests for records located at a Bureau institution other than the Central Office or a Regional Office shall be referred to the appropriate staff at that institution for proper handling.

- The requester shall be notified of the status of his or her request by the office with final responsibility for processing the request.

- Every effort shall be made to respond to the requester within the time limit set under the governing disclosure statute.

21. **REVIEW OF DOCUMENTS FOR PRIVACY ACT REQUESTS.** If a document is deemed to contain information exempt from disclosure, any non-exempt sections of the record shall be provided to the requester after deletion of the exempt portions.

22.  **LIMITATIONS ON EMPLOYEE RIGHT TO ACCESS UNDER THE PRIVACY ACT**.  Under Congressional authority granted to the Attorney General by 5 U.S.C. § 552a(j) and (k), certain systems of records listed at 28 CFR 16.97 and on Attachment C are exempt from access under the Privacy Act of 1974.

Bureau records are also subject to the FOIA exemptions from disclosure listed in 5 U.S.C. § 552(b).

23.  **DENIAL OF ACCESS AND NOTICE OF APPEAL RIGHTS**.  If a Privacy Act request for records is denied in whole or in part, a denial letter shall be issued and signed by the Director, or his or her designee, and shall state the basis for denial under 28 CFR 513.32.

- A requestor who has been denied such access shall be advised that he or she may appeal that decision to the U.S. Department of Justice, Office of Information and Privacy, (OIP) by filing a written appeal within 30 days of the receipt of the denial.

- The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the:

      Office of Information and Privacy
      U.S. Department of Justice
      Suite 570, Flag Building
      Washington DC  20530

During the appeal, Bureau staff shall assist OIP staff in the review of contested Bureau documents necessary to resolve the appeal and/or litigation.  This review may be coordinated by FOIA/PA staff in the Office of General Counsel or Regional Counsel.

24.  **CORRECTION OF RECORDS**

a.  **Inmate Requests for Correction**.  An inmate may submit a written request for correction of records through the Bureau's Administrative Remedy Program.

b.  **Non-inmate Requests for Correction**.  A person other than an inmate may request correction of inaccurate, incomplete, or irrelevant information by writing to the Director of the Federal Bureau of Prisons.

- A request for correction must identify the particular record in question, state the correction sought, and set forth the justification for the correction.

- Both the request and the envelope must be clearly marked **"Privacy Act Correction Request."**

c.  **Bureau Responses**

(1)  **Requests to Correct Bureau Records**

(a)  Bureau staff may make or deny requests for correction of Bureau records pursuant to procedures contained in 28 CFR 16.50.  One basis for denial may be that the records are contained in a Bureau system of records that has been published in the Federal Register and exempted from the Privacy Act's provisions requiring amendment and correction.  Refer to 28 CFR 16.97 for further information.

**Inmate Central File Records.**  Unit staff shall take reasonable steps to ensure the accuracy of challenged information in the Inmate Central File, particularly when the challenged information can be verified.

- Reasonable steps include requiring specific action from the inmate, such as providing documents which support the challenge and/or the names of people to contact regarding the challenged information.

- Once Bureau staff make a determination that the challenged information is incorrect, appropriate notations on the record shall be made to ensure that staff do not use the discredited information to make decisions regarding the inmate.

- Special procedures have been developed when the challenged information involves a PSI Report.  See the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-Files for further information.

(b)  Any denial of a request for correction should contain a statement of the reason for denial and notice to the requester that the denial may be appealed to the U.S. Department of Justice, Office of Information and Privacy, by filing a written appeal within 30 days of the receipt of the denial.

The appeal shall be marked on the face of the letter and the envelope, **"PRIVACY APPEAL - DENIAL OF ACCESS,"** and shall be addressed to the OIP address cited in Section 23 above.

(2)  **Requests to Correct Records Originated by Other Federal Agencies.**  Requests for correction of records prepared by other Federal agencies shall be forwarded to that agency for appropriate action and the requester shall be immediately notified of the referral in writing.

(3) **Requests to Correct Records Originated by Non-Federal Source.** When the request is for correction of non-Federal records, the requester shall be advised to write to that non-Federal entity.

25. **FEES FOR PRIVACY ACT REQUESTS.** Fees for copies of records disclosed under the Privacy Act, including fees for an employee's own records, may be charged in accordance with 28 CFR 16.47.

PART FOUR: **[FREEDOM OF INFORMATION ACT REQUESTS FOR INFORMATION]**

26. **[FREEDOM OF INFORMATION ACT REQUESTS § 513.60. Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C. 20534. The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought. See §§ 513.61 through 513.63 for additional requirements.]**

28 CFR 513.61 through 63 refers to Sections 27 through 29 of this Program Statement.

27. **[FREEDOM OF INFORMATION ACT REQUESTS BY INMATES § 513.61**

   **a. Inmates are encouraged to use the simple access procedures described in § 513.40 to review disclosable records maintained in his or her Inmate Central File.]**

   28 CFR 513.40 refers to Section 12 of this Program Statement.

   Similarly, inmates are encouraged to use the simple access procedures described in Section 15 above to review certain Bureau Program Statements that may be available locally at the institution.

   **[b. An inmate may make a request for access to documents in his or her Inmate Central File or Medical File (including documents which have been withheld from disclosure during the inmate's review of his or her Inmate Central File pursuant to § 513.40) and/or other documents concerning the inmate which are not contained in the Inmate Central File or Medical File. Staff shall process such a request pursuant to the applicable provisions of the Freedom of Information Act, 5 U.S.C. 552.**

**c.  The inmate requester shall clearly mark on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and shall clearly describe the records sought, including the approximate dates covered by the record.  An inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, if the inmate requests documents to be sent to a third party, the inmate must provide with the request an example of his or her signature, which must be verified and dated within three (3) months of the date of the request.]**

A request for "my records," "all my records," or similar wording shall be interpreted as a request for a copy of Inmate Central File records **and** Medical File records currently maintained at the inmate's institution of confinement or, in the case of former inmates, in the last institution of confinement.

Inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

**28.  [<u>FREEDOM OF INFORMATION ACT REQUESTS BY FORMER INMATES</u> § 513.62.  Former federal inmates may request copies of their Bureau records by writing to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C.  20534.  Such requests shall be processed pursuant to the provisions of the Freedom of Information Act.  The request must be clearly marked on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and must describe the record sought, including the approximate dates covered by the record.  A former inmate making such a request must provide his or her full name, current address, date and place of birth.  In addition, the requester must provide with the request an example of his or her signature, which must be either notarized or sworn under penalty of perjury, and dated within three (3) months of the date of the request.]**

Former inmates are encouraged to provide Federal register numbers to assist in properly identifying requested records.

**29.  [<u>FREEDOM OF INFORMATION ACT REQUESTS ON BEHALF OF AN INMATE OR FORMER INMATE</u> § 513.63.  A request for records concerning an inmate or former inmate made by an authorized representative of that inmate or former inmate will be treated as in § 513.61, on receipt of the inmate's or former inmate's written authorization. This authorization must be dated within three (3) months of the date of the request letter.  Identification data, as listed in 28 CFR 16.41, must be provided.]**

Requesters are encouraged to provide Federal register numbers to assist in properly identifying requested records.

30. **[ACKNOWLEDGMENT OF FREEDOM OF INFORMATION ACT REQUESTS**
§ 513.64

a.  All requests for records under the Freedom of Information
Act received by the FOIA/PA Administrator, Office of General
Counsel, will be reviewed and may be forwarded to the appropriate
Regional Office for proper handling.  Requests for records
located at a Bureau facility other than the Central Office or
Regional Office may be referred to the appropriate staff at that
facility for proper handling.

b.  The requester shall be notified of the status of his or her
request by the office with final responsibility for processing
the request.]

31. **[REVIEW OF DOCUMENTS FOR FREEDOM OF INFORMATION ACT REQUESTS**
§ 513.65.  If a document is deemed to contain information exempt
from disclosure, any reasonably segregable portion of the record
shall be provided to the requester after deletion of the exempt
portions.  If documents, or portions of documents, in an Inmate
Central File have been determined to be nondisclosable by
institution staff but are later released by Regional or Central
Office staff pursuant to a request under this section,
appropriate instructions will be given to the institution to move
those documents, or portions, from the Inmate Privacy Folder into
the disclosable section of the Inmate Central File.]

32. **[DENIALS AND APPEALS OF FREEDOM OF INFORMATION ACT REQUESTS**
§ 513.66.  If a request made pursuant to the Freedom of
Information Act is denied in whole or in part, a denial letter
must be issued and signed by the Director or his or her designee,
and shall state the basis for denial under § 513.32.  The
requester who has been denied such access shall be advised that
he or she may appeal that decision to the Office of Information
and Privacy, U.S. Department of Justice, Suite 570, Flag
Building, Washington, D.C.  20530.  Both the envelope and the
letter of appeal itself should be clearly marked: "Freedom of
Information Act Appeal."]

28 CFR 513.32 refers to Section 7 of this Program Statement.

During the appeal and any subsequent litigation, Bureau staff
shall assist DOJ staff, including OIP staff, in reviewing
contested Bureau documents necessary to resolve the appeal and/or
litigation.

PS 1351.05
9/19/2002
Page 28

33.  **[<u>FEES FOR FREEDOM OF INFORMATION ACT REQUESTS</u> § 513.67. Fees for copies of records disclosed under the FOIA, including fees for a requester's own records, may be charged in accordance with Department of Justice regulations contained in 28 CFR 16.10.]**

See further description of fees in Section 16 above.

34.  **[<u>TIME LIMITS FOR RESPONSES TO FREEDOM OF INFORMATION ACT REQUESTS</u> § 513.68.  Consistent with sound administrative practice and the provisions of 28 CFR 16.1, the Bureau strives to comply with the time limits set forth in the Freedom of Information Act.]**

Staff processing requests for release of information under the FOIA are expected to be familiar with the provisions of 28 CFR 16.1(d), as follows:

- A requester must be notified of the decision on his or her request within 10 days after its receipt (excluding Saturday, Sunday, and legal public holidays).  Conditions for extension of this time are discussed in 28 CFR 16.1(d).

- Generally, all FOIA requests shall be processed in the approximate order of receipt, unless the requester shows exceptional circumstances exist to justify an expedited response.  Examples of exceptional circumstances which might justify an expedited response include the following:

  - a threat to life or safety,

  - the loss of substantial due process rights, or

  - in cases of widespread and exceptional interest to the media, **and** upon approval of DOJ's Office of Public Affairs, possible questions about the Government's integrity which affect public confidence.

Because a decision to take a FOIA request out of order delays other requests, simple fairness demands that such a decision be made only upon careful scrutiny of truly exceptional circumstances.

  - Regional Counsel shall follow DOJ guidelines as to whether to expedite a particular request because it fits into one of the **first two** exceptions described above.

- Requests which are being considered for expedited processing because of the **last exception** described above shall first be sent through the FOIA/PA Administrator to the General Counsel for obtaining DOJ approval.

35.  **TRANSITION.**  Inmates must remove any copies of PSRs and SORs as listed in Section 12.a.(2)(d)(1) they currently possess no later than 45 days after the effective date of this PS.  Each inmate must inspect his or her personal property for photocopies of these documents and then dispose of them.

Inmates possessing these documents when this transition period expires will be subject to disciplinary action for possession of contraband.

Inmates may dispose of their PSRs and SORs by any of the following methods:

- Mailing the documents out of the institution to someone of the inmate's choosing;

- Destroying or discarding the PSRs or SORs themselves; or

- Delivering them to a staff member for destruction.


                              /s/
                              Kathleen Hawk Sawyer
                              Director

PS 1351.05
9/19/2002
Attachment A, Page 1

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## EXEMPTIONS TO DISCLOSURE PROVIDED IN
## THE FREEDOM OF INFORMATION ACT

1.  The Freedom of Information Act (5 U.S.C. § 552) provides generally for the disclosure of agency records.  Section 552(b) exempts from mandatory disclosure matters that are -

     "(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

     (2)  related solely to the internal personnel rules and practices of an agency;

     (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

     (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

     (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

     (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

     (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

          (A) could reasonably be expected to interfere with enforcement proceedings,

          (B) would deprive a person of a right to a fair trial or an impartial adjudication,

          (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

          (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which

furnished information of a confidential basis, and, in the case
of a record or information compiled by a criminal law enforcement
authority in the course of a criminal investigation or by an
agency conducting a lawful national security intelligence
investigation, information furnished by a confidential source,

       (E) would disclose techniques and procedures for law
enforcement investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or prosecutions if
such disclosure could reasonably be expected to risk
circumvention of the law, or

       (F) could reasonably be expected to endanger the life
or physical safety of any individual;

   (8)  contained in or related to examination, operating, or
condition reports prepared by, on behalf of, or for the use of an
agency responsible for the regulation or supervision of financial
institutions; or

   (9)  geological and geophysical information and data,
including maps, concerning wells.

2.  Any reasonably segregable portion of a record shall be
provided to any person requesting such record after deletion of
the portions which are exempt under this subsection."

3.  Under 5 U.S.C. § 551, Federal "agency records" are defined
**not** to include records of

   (1)  the Congress;

   (2)  the courts of the United States;

   (3)  the governments of the territories or possessions of
      the United States; or

   (4)  the government of the District of Columbia.

PS 1351.05
9/19/2002
Attachment B, Page 1

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

## PUBLIC INFORMATION

**STAFF:**

        Name
        Position Title (past and present)
        Grade (past and present)
        Salary (past and present)
        Duty Station (past and present)
        Duty Station Address (past and present)

**INMATES:**

See list provided in the Program Statement on News Media Contacts
and the Public Information Officer's Handbook  (PIO Handbook).

## PUBLISHED SYSTEMS OF RECORDS

| #: | NAME: | PUBLICATION DATE: |
|---|---|---|
| 001 | Custodial/Security Record System | 09/28/78 |
| 002 | FOIA Record System | 09/17/77 |
| 003 | Industrial Inmate Employment Record System | 09/28/78 |
| 004 | Inmate Administrative Remedy Record System | 09/28/78 |
| 005 | Inmate Central Records System | 06/07/84 |
| 006 | Inmate Commissary Accounts Record System | 09/17/77 |
| 007 | Inmate Physical/Mental Health Record System | 09/28/78 |
| 008 | Inmate Safety/Accident Compensation Record System | 09/28/78 |
| 009 | Federal Tort Claims Act Record System | 09/28/78 |
| 010 | Access Control Entry/Exit System | 10/04/95 |
| 011 | Telephone Activity Record System | 04/21/95 |
| 012 | Office of Internal Affairs Investigative Record System | 08/29/95 |
| 101 | NIC Technical Assistance Resource Persons Directory | 04/18/83 |
| 102 | NIC Field Readers List | 04/18/83 |

PS 1351.05
9/19/2002
Attachment D, Page 1

(Date)

```
                                    Re:  _____
                          Our Reg. No:  _____
                          Docket No:    _____
```

Dear _____,

Please advise us as to whether the attached document(s) prepared by your agency may be (1) disclosed to the above inmate and (2) used with respect to the inmate's parole hearing(s).

Disclosure of information contained in an inmate's prison files is governed by a variety of Federal laws, principally the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a).  Guidelines for the implementation of these laws are given below.

### GUIDELINES FOR DISCLOSURE TO A FEDERAL PRISON INMATE

Upon an inmate's request, materials in that inmate's files will be disclosed to that inmate unless there is a legal exemption to such disclosure.  Typical examples of documents which may be withheld are those which, if disclosed, might -

    a. constitute a clearly unwarranted invasion of personal privacy;

    b. reveal sources of information obtained upon a legitimate expectation of confidentiality or otherwise endanger the life or physical safety of any person;

    c. lead to a serious disruption of the subject inmate's institutional program, due to the diagnostic or evaluative opinions contained in the document, and which could likely affect the inmate's clearly documented adjustment difficulties;

    d. interfere with ongoing law enforcement proceedings, including administrative investigations; or

    e. enable the requestor to violate any law or threaten the security of a Federal Bureau of Prisons institution through disclosure of law enforcement techniques or procedures.

PS 1351.05
9/19/2002
Attachment D, Page 2

**GUIDELINES FOR DISCLOSURE FOR USE AT THE INMATE'S PAROLE HEARING**

A Federal prison inmate must be provided reasonable access to reports or documents to be used by the Parole Commission in making its parole release determination. The Commission, of course, wants to use all the information in the documents you prepare. If you determine that some information may not be disclosed, in accordance with the guidelines listed above, you must prepare a summary of excluded information if it is to be used by the Parole Commission. This summary, as well as the disclosable portions of the document, will then be available to the inmate, **and the Commission thereby be permitted to review the entire document.** The summary need only be phrased in general terms to enable the inmate to respond to the essential allegations made in excluded material. It should not reveal specific information which might compromise a legitimate need for confidentiality.

## OPTIONS FOR DISCLOSURE OF INFORMATION

There are three options which exist under Federal law with respect to disclosure to the inmate and to the U.S. Parole Commission of the information prepared by your agency.

**Option 1** - You may authorize complete disclosure of the document. The document is available for inmate review and copying. Court disclosure instructions, if any, will be followed.

**Option 2** - You may recommend exclusion of a portion or all of the document from disclosure. Please identify the part(s) of the document you consider exempt form disclosure and prepare an adequate summary of the excluded material. The Federal Bureau of Prisons will review the reasons given in accordance with the guidelines listed in this letter. If at least one of the guidelines is met, both the summary and the disclosable portion of the document, if any, will be available to the inmate. If the Federal Bureau of Prisons determines the document to be entirely disclosable, the document will be returned to you, and no copy will be retained by the Federal Bureau of Prisons or for release to the U.S. Parole Commission or to the inmate.

**Option 3** - You may refuse to authorize disclosure of the document, or a summary in any form to the inmate. If this option is selected, please provide a memorandum detailing reasons for non-disclosure. The Federal Bureau of Prisons will review the reasons given in accordance with Bureau policy and the guidelines listed in this letter. If at least one of the guidelines is met, the document will be placed in the Inmate Privacy Folder and will not be available for release either to the inmate or to the U.S.

Parole Commission.  If the Federal Bureau of Prisons considers
the document disclosable, the document will be returned to you,
and no copy will be retained for use by the Federal Bureau of
Prisons.  Please consider carefully before choosing this option.

We appreciate your review of the attached documents with respect
to their disclosure.  We have enclosed a form for your response.
Thank you for you cooperation.

Sincerely,

Warden

Attachments

PS 1351.05
9/19/2002
Attachment D, Page 4

(Date)
To:   Warden:_____
          Institution:_____

FROM:  (Authorized Agency Representative)
          (Agency)

SUBJECT: Disclosure of Information to Federal Inmate and to
          U.S. Parole Commission

This replies to your (date) letter in which you forward to us,
and ask that we review, certain document(s) prepared by our
agency to determine whether the document(s) may be disclosed to
the Federal inmate involved and the U.S. Parole Commission.

**Document(s):**

The following action may be taken with respect to these
documents:

____ 1. Complete disclosure of the document(s) is (are)
authorized.

          The document may be made available for inmate review and
          copying.

____ 2. The following portion(s) of the document(s) is (are) to be
          excluded on the basis that if disclosed, it might -

                    ____ constitute a clearly unwarranted invasion of
                          personal privacy;

                    ____ reveal sources of information obtained under a
                          legitimate expectation of confidentiality or
                          otherwise endanger the life or physical safety of
                          any person;

                    ____ lead to a serious disruption of the subject
                          inmate's institutional program, due to the
                          diagnostic or evaluative opinions contained in the
                          document, and which it could likely affect the
                          inmate's clearly documented adjustment
                          difficulties;

                    ____ interfere with ongoing law enforcement
                          proceedings, including administrative
                          investigations; or

PS 1351.05
9/19/2002
Attachment D, Page 5

_____ enable the requester to violate any law or
threaten the security of a Federal Bureau of
Prisons institution through disclosure of law
enforcement techniques or procedures.

_____ Other: _(specify)_____
A summary of the excluded material is attached.

_____ 3. Neither the document nor a summary of the document is to
be disclosed in any form to the inmate.



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** OGC
**NUMBER:** 1315.07
**DATE:** 11/5/99
**SUBJECT:** Legal Activities,
Inmate

1.  **[**<u>PURPOSE AND SCOPE</u> **§543.10.  The Bureau of Prisons affords an inmate reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents.  The Warden shall establish an inmate law library, and procedures for access to legal reference materials and to legal counsel, and for preparation of legal documents.]**

2.  **SUMMARY OF CHANGES.**  The changes include allowing the Central Office to contact the institutions by way of BOPNet GroupWise or memorandum, rather than Operations Memorandum, to direct the ordering of law library materials.

The procedures for posting and maintaining Bureau and U.S. Parole Commission Federal Register documents at institutions are revised and streamlined.  These documents will be sent via GroupWise to staff responsible for the institution law libraries instead of being issued by Operations Memoranda.

All references to the "Central Office Librarian" have been changed to "Bureau's Librarian" to reflect the Librarian's responsibility for providing services Bureau-wide.

The Standards Referenced have been updated to reflect the revised American Correctional Association standards.

Finally, the required publications in Attachments A, B, and C are updated to reflect a variety of changes including changes in name and title, volume numbers, publishers and publishing companies, etc.  Specific changes to publications in Attachments A, B, and C, requirements for the main, satellite camp and basic inmate law libraries, include:

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

a. **Additions**

*Manual de Pautaus*, Zapp (Publicaciones Legales en Espanol, Inc.)

b. **Out-of-Print**

*Military Law Reporter* (Public Law Education Institute). This publication will no longer be available but institutions which currently have this volume should continue to keep these volumes on the shelves.

c. **Removal and Replacements**

The full-text of the *Federal Sentencing Guidelines* is included in the United States Code Annotated (USCA) volumes. Therefore, to prevent duplication and for cost containment, the other edition of the Federal Sentencing Guidelines published by West Group has been removed.

*Shepard's Federal 2d Citations* and *Federal Supplement Citations* has been combined into one publication, the *Shepard's Federal Citations* (Lexis Law Publishing).

*You and the Law* has been replaced with *ABA's Family Legal Guide* (Publications International Ltd).

*Ballentine's Law Dictionary* has been replaced with *Black's Law Dictionary*.

d. **Clarifications**

When single volumes of the *USCA* are purchased, the pamphlet volumes are not included. To indicate this, a notation has been added after the *USCA* titles in Attachments B and C for Satellite Camp and Basic Inmate Law Libraries, respectively.

The *Maryland Reporter and Atlantic 2d Reporter* are the only required legal publications for state case law that are provided. The publisher only makes available DC case law in print format through their regional reporter - *Atlantic 2d* Reporter, which also contains case law for other states in that region.

The Bureau **is not** mandated to provide state case law and other state legal materials.

3. **PROGRAM OBJECTIVES.** The expected results of this program are:

a.  Inmates will have reasonable access to legal materials for preparation of legal documents.

b.  Inmates will have reasonable opportunity to prepare their legal documents.

c.  Inmates and staff will be able to make oaths and affirmations and have them witnessed by institution case managers, as authorized by 18 U.S.C. § 4004.

4.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

PS 1315.06      Inmate Legal Activities (3/3/97)

b.  **Directives Referenced**

PS 1350.02      Acceptance of Donations (6/29/98)
PS 2100.03      Budget Execution Manual (8/4/95)
PS 4500.04      Trust Fund/Warehouse/Laundry Manual
                (12/15/95)
PS 5264.06      Telephone Regulations for Inmates (12/22/95)
PS 5265.11      Correspondence (7/9/99)
PS 5266.08      Publications, Incoming (8/20/97)
PS 5270.07      Discipline and Special Housing Units
                (12/29/87)
PS 5580.05      Inmate Personal Property (9/30/96)

c.  Rules cited in this Program Statement are contained in 28 CFR §543.10 through §543.16.

5.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4256, 3-4257, 3-4261, 3-4262, 3-4263, 3-4264, 3-4442, 3-4447

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-3D-18, 3D-23, 3E-01, 3E-02, 3E-03, 5D-12

c.  American Correctional Association 3rd Edition Standards for Boot Camp Programs:  1-ABC-3D-03

d.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:  2-CO-5F-01

6.  **LAW LIBRARIES**

   a.  **Main Law Libraries.**  Each Warden must establish a main law library containing the materials listed in the Required Main Law Library Materials (Attachment A), unless an item is out of print.

   Institutions must replace any misplaced or destroyed volumes within a reasonable time after staff become aware of the loss in any Bureau Law Library.

   b.  **Satellite Camp Law Libraries.**  Each institution with a Satellite Camp must establish, at a minimum, a modified basic law library in the Satellite Camp that contains the materials listed in the Required Materials for Satellite Camp Law Libraries (Attachment B), unless an item is out of print.

   Multiple copies are required for certain materials listed in Attachment B; however, Supervisors of Education may use their discretion in lending duplicate resources to other inmate law libraries.

   For inventory and program review purposes, however, such materials are considered to be in the Satellite Camp law library.

   c.  **Basic Law Libraries.**  A basic law library must contain the materials listed in the Required Materials for Basic Law Libraries (Attachment C), unless an item is out of print.

   d.  **New Law Libraries.**  New institutions, or existing institutions constructing new housing units, must use start-up funds to purchase required law library materials (including the first annual subscription to the <u>Criminal Law Reporter</u>.)

   The Bureau's Librarian may be consulted for assistance with ordering publications.

   e.  **Adding or Upgrading Law Libraries.**  The Warden may request a basic law library be established when physical restrictions or inmate assignments prevent adequate access to the main law library.

   Any request for an additional basic law library in an existing institution, or an upgrade to a main law library, is to be presented to the Regional Counsel for recommendation and forwarded to the General Counsel for a decision.

   f.  **Damaged Law Libraries.**  Requests for replacement funding for missing or damaged books due to institution disturbances or natural causes should be forwarded to the Regional Director.

7.  **MAINTENANCE OF LAW LIBRARIES**

a.  The Central Office will fund the periodic updates of required law library materials and all new additions which are deemed necessary for one or more law libraries.  Ordinarily, each institution must order its own publications.

The Central Office will notify institutions either by way of memoranda or GroupWise of:

- the publications required,
- the publishers and addresses for ordering the publications,
- the prices of the publications, and
- funding information.

b.  The Supervisor of Education is to process new purchase requirements within 30 days of receipt of such notice and forward a copy of all orders charged to Accounting Classification Code (Actclass) FP090022G2, to the Bureau Librarian in the Central Office.

c.  Maintenance of the materials is the institution's responsibility.  Materials that have been lost or damaged must be replaced with institution funding.  The Bureau Librarian may be consulted to help order replacements.  Law books which are not required for all libraries may be added to an institution's law library collection under the following circumstances:

(1) Pursuant to the Program Statement on Acceptance of Donations, an inmate may donate an unwanted personally-owned law book to the law library; however, staff may decline such a gift. If there is a question about whether to accept a particular volume, the Regional Counsel and Ethics Officer may be consulted.

Donated materials, if lost or damaged, may not be replaced by the institution or the Central Office.

(2)  If a person other than an inmate offers a donation to the institution law library collection, it may be accepted pursuant to the Program Statement on Acceptance of Donations. The Regional Counsel and Ethics Officer may be consulted about an appropriate response to the offer.

(3)  State officials are responsible for providing state legal assistance and/or state legal materials to state inmates transferred to Federal custody.  Staff may not interfere in an inmate's attempts to obtain such assistance or materials.

If state correctional officials elect to provide state legal materials for their inmates, the institution will suggest the manner in which such materials should be provided.  The Regional Counsel must be notified if questions arise.

d.  In June and December of each year, the Education Branch, Central Office will provide each Supervisor of Education an inventory checklist of required law library publications.  Within 30 days of receipt, each Supervisor of Education must inventory each institution law library and list all missing or severely damaged materials on the checklist's discrepancy sheet.

Missing or severely damaged publications must be replaced using institution funds.  One copy of the institution's completed inventory must be kept at the institution and one copy of the discrepancy sheet sent to the Central Office Education Administrator, the Regional Education Administrator, and the Regional Counsel.

e.  Each institution must set aside a sufficiently large room where law library books will be kept to allow inmates the opportunity to work at tables without the need for removing the materials.

Each _Reporter_ volume becomes a permanent part of the library collection.  Therefore, the site for the law library should allow for the expanding nature of the collection.

f.  Ordinarily, the Supervisor of Education is responsible for supervising the law library's upkeep and operation.  Since legal materials are expensive, supervision of law library areas must be provided as necessary to protect the materials.

The _Reporter_ and other statutory materials and case reporters are frequently updated, and correct placement of supplements and pocket parts is important.  Out-of-date supplements and other outdated materials are to be disposed of when updated materials are received.

g.  Institution copying equipment may be made available to reproduce materials needed for research outside the library area. When this is done, procedures should be established for an inmate to request a reasonable amount of reproduced material.  It is suggested that the request form contain a space for the inmate to indicate why the material is needed outside the time that is made available in the library.

By providing enough hours for library usage and by making copying equipment available when possible, destruction and theft of legal materials should be reduced. Institutions may provide copy vending machines for inmate use.

8. **MILITARY LAW MATERIALS.** Several military law materials (see Attachment A) must be provided in the main law libraries at each institution.

a. Nine circulating sets of the <u>Military Justice Reporter</u> are available through the Bureau's Librarian in the Central Office.

(1) Upon receiving the <u>Reporter</u>, the Supervisor of Education will place the set in the institution's main law library.

(2) The Supervisor of Education must ensure that the requesting inmate is notified promptly that the <u>Reporter</u> is available. If that inmate does not have access to the main law library, the volumes are to be made available by alternative means, such as through a basic law library.

(3) An inmate may not maintain the materials in his or her cell or as personal property.

(4) The Bureau's Librarian will fill requests for circulating sets in the order received in the Central Office.

If requests exceed the number of circulating sets, the Librarian will notify the Supervisor of Education that the provided set will be withdrawn after 90 days. Ordinarily, this notification is given to the institution which has had a set the longest period of time.

The Supervisor of Education must place a notice to this effect with the set so that interested inmates are advised of the time period during which the set is available.

b. In addition to the nine circulating sets, a tenth set of the <u>Reporter</u> will remain in the Central Office Library and will not circulate. The Central Office Librarian must also maintain a single reference copy of <u>Court-Martial Reports</u>.

(**Note:** This is a different publication than the <u>Court-Martial Reports Index and Citator</u>.)

(1)   An inmate may request copies of specific cases from either the <u>Military Justice Reporter</u> or <u>Court-Martial Reports</u> by submitting a written request to the institution's Supervisor of Education.   The inmate's request must include case citations sufficient to permit identification.

(2)   Ordinarily, the Supervisor of Education must respond to the request within five work days of receipt by forwarding the request (BOPNet GroupWise may be used) to the Bureau Librarian, with a notation of the date that the request was received.

(3)   The Bureau Librarian must forward a copy of the requested cases to the Supervisor of Education ordinarily within five work days, but no later than 21 calendar days, from the date the request was received.

(4)   Upon receiving the requested material, the Supervisor of Education must have the material placed in the institution's main law library (or other place he or she finds suitable) for use by the requesting inmate and other interested inmates.

The Supervisor of Education is to ensure that the requesting inmate is notified promptly that the requested cases are available.

(5)   The inmate may not maintain the requested material in his or her cell or as personal property unless the inmate pays for a copy of the materials under the institution's established procedures for copying legal materials.

9.   **FEDERAL REGISTER MATERIALS.**   Federal Register documents (specifically, final rules, proposed rules, interim rules, and certain notices) pertaining to the Bureau and to the U.S. Parole Commission are to be maintained in the institution's inmate law libraries.   Maintaining these documents in the inmate law libraries is intended to ensure that inmates have the opportunity to participate in the rulemaking process.

a.   The Rules Administrator in the Office of General Counsel is to distribute these Federal Register documents to all institution Education Supervisors via GroupWise attachments.   The Rules Administrator is to include in a second attachment, a List of Federal Register Documents available in the inmate law library.

Ordinarily, proposed rules and interim rules will be listed until such time as the Bureau issues a final rule document in the matter.   Final rules will be listed until the rules become available in the annual revision of title 28 of the Code of Federal Regulations.

b.   The Education Supervisor must distribute the attachments (either on paper or via GroupWise) to staff responsible for the institution's inmate law libraries.  Staff assigned to the institution law libraries are to maintain paper copies of the Federal Register documents along with the most recent copy of the List of Federal Register Documents.

c.   The Education Supervisor must forward a copy of the most recent List of Federal Register Documents to institution Unit Managers for posting on inmate bulletin boards.  The List of Federal Register Documents serves to notify inmates that the documents are available in the inmate law libraries.

d.   The Education Supervisor must provide a copy to the President of the local union of any of these Federal Register documents pertaining to the Bureau.  Union representatives may send comments on proposed or interim rules as members of the public directly to the Rules Administrator.

e.   The Education Supervisor must also ensure that a copy of each Federal Register document is posted on at least one centrally located staff bulletin board.  Staff may send comments on proposed or interim rules as members of the public directly to the Rules Administrator, and need not send such comments through the normal "chain of command."

10.  **[LEGAL RESEARCH AND PREPARATION OF LEGAL DOCUMENTS §543.11**

**a.   The Warden shall make materials in the inmate law library available whenever practical, including evening and weekend hours.  The Warden shall allow an inmate a reasonable amount of time, ordinarily during the inmate's leisure time (that is, when the inmate is not participating in a scheduled program or work assignment), to do legal research and to prepare legal documents. Where practical, the Warden shall allow preparation of documents in living quarters during an inmate's leisure time.**

**b.   The Warden shall periodically ensure that materials in each inmate law library are kept intact and that lost or damaged materials are replaced.**

**c.   Staff shall advise an inmate of rules and local procedures governing use of the inmate law library.  Unauthorized possession of library materials by an inmate constitutes a prohibited act, generally warranting disciplinary action (see part 541 of this chapter).]**

Part 541 refers to the Program Statement on Inmate Discipline and Special Housing Units.

**[d. An inmate's legal materials include but are not limited to the inmate's pleadings and documents (such as a pre-sentence report) that have been filed in court or with another judicial or administrative body, drafts of pleadings to be submitted by the inmate to a court or with other judicial or administrative body which contain the inmate's name and/or case caption prominently displayed on the first page, documents pertaining to an inmate's administrative case, photocopies of legal reference materials, and legal reference materials which are not available in the institution main law library (or basic law library in a satellite camp).]**

Staff must consult with Regional Counsel if there is any question whether certain items qualify as legal materials.

**[(1)  An inmate may solicit or purchase legal materials from outside the institution.  The inmate may receive the legal materials in accordance with the provisions on incoming publications or correspondence (see 28 CFR part 540, subparts B and F) or through an authorized attorney visit from a retained attorney.  The legal materials are subject to inspection and may be read or copied unless they are received through an authorized attorney visit from a retained attorney or are properly sent as special mail (for example, mail from a court or from an attorney), in which case they may be inspected for contraband or for the purpose of verifying that the mail qualifies as special mail.]**

28 CFR part 540, subparts B and F refer to the Program Statements on Correspondence and Incoming Publications respectively.

**[(2)  Staff may allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions. Staff may also allow an inmate to possess the legal materials of another inmate subject to the limitations of paragraph (f)(2) of this section.  The Warden may limit the amount of legal materials an inmate may accumulate for security or housekeeping reasons.]**

To ensure that legal materials do not become a security or housekeeping hazard (e.g., fire, sanitation), each institution may establish a limit on the amount of, and storage location for legal materials in the inmate's living area.

The amount of storage space provided for legal materials depends upon the total storage space available.  Ordinarily, the amount may not be restricted below three cubic feet per inmate. In a segregation or detention area, the amount ordinarily may not be restricted below one cubic foot per inmate.

Alternate storage areas may be provided only for storing excess legal materials.  The Regional Counsel may be consulted if there is a question as to the need for bulky or excess legal material, or if there is any question regarding the applicability of the legal materials to the inmate's own legal actions.

**[e.  An inmate is responsible for submitting his documents to court.  Institution staff who are authorized to administer oaths shall be available to provide necessary witnessing of these documents, as requested by inmates and at times scheduled by staff.**

See Section 16 for further instructions on administering oaths and acknowledgments.

**f. (1)  Except as provided for in paragraph f.(4) of this section, an inmate may assist another inmate in the same institution during his or her leisure time (as defined in paragraph a. of this section) with legal research and the preparation of legal documents for submission to a court or other judicial body.]**

Any assistance offered by one inmate to another is voluntary.  An inmate is not entitled to assistance from any specific inmate.  Because no inmate may conduct a business, the assisting inmate may not receive compensation.  The assisting inmate shall not be provided any privileges ordinarily afforded to attorneys or paralegals, clerks, and legal assistants, even if the inmate was an attorney before his or her incarceration.

Inmates who are in different institutions are prohibited from providing legal assistance to each other except to the extent that they may be allowed to correspond with each other about legal matters.  For example, immediate family members or co-defendants or co-plaintiffs may receive approval to exchange correspondence (see the Program Statement on Correspondence).

Inmates who are allowed to exchange correspondence may choose to include legal material pertinent to their joint action in their correspondence.  Enclosed legal material, however, is subject to inspection and can be read or copied.

Legal material which co-defendants or co-plaintiffs receive through special mail or from an attorney through an attorney visit is subject to inspection for contraband or qualification as special mail only, and may not be read or copied.

**[(2)   Except as provided for in paragraph f.(4) of this section, an inmate may possess another inmate's legal materials while assisting the other inmate in the institution's main law library and in another location if the Warden so designates.**

**(a)   The assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library or other designated location.  An assisting inmate is permitted to make handwritten notes and to remove those notes from the library or other designated location if the notes do not contain a case caption or document title or the name(s) of any inmate(s).  The assisting inmate may also develop and possess handwritten drafts of pleadings, so long as the draft pleadings do not contain a case caption or document title or the name(s) of any inmate(s).  These notes and drafts are not considered to be the assisting inmate's legal property, and when the assisting inmate has these documents outside the law library or other designated location, they are subject to the property limitations in § 553.11(a) of this chapter.]**

§553.11(a) refers to the Program Statement on Inmate Personal Property.

**[(b)   Although the inmate being assisted need not remain present in the law library or other designated location while the assistance is being rendered, that inmate is responsible for providing and retrieving his or her legal materials from the library or other designated location.  Ordinarily, the inmate must provide and retrieve his or her legal materials during his or her leisure time.  An inmate with an imminent court deadline may request a brief absence from a scheduled program or work assignment in order to provide or retrieve legal materials from an assisting inmate.]**

The law library is the most appropriate location for allowing inmates to assist one another with legal matters however, the Warden may choose to designate additional locations.

Where it is difficult to use the institution's main law library (for example, at a medical facility, a metropolitan detention center, a metropolitan correctional center, an administration maximum security facility, an administrative high security level institution, or in a special housing unit,

pretrial unit, or holdover unit), the Warden should designate another location.  The need for institution security, good order, or discipline, however, may prevent the use of another location.

The inmate being assisted must bring his or her legal materials to the law library or other designated location to provide them to the assisting inmate.  The assisting inmate may not remove the legal materials from the law library or other designated location.

Legal materials left unattended in the law library or other designated location may be disposed of as nuisance contraband or returned by staff to the owner.  Staff are to consult with institution legal staff or Regional Counsel if they have a question about who owns the legal materials.

**[(3)  The Warden may give special consideration to the legal needs of inmates in mental health seclusion status in federal medical centers or to inmates in controlled housing.**

**(4)  The Warden at any institution may impose limitations on an inmate's assistance to another inmate in the interest of institution security, good order, or discipline.]**

For reasons of security, inmates in an administrative institution or unit or in a special housing unit have limited access to other inmates on those units and no access to general population inmates.  Legal assistance under Section 10 of this Program Statement remains available for such inmates.

**[g.  The institution staff shall, upon an inmate's request and at times scheduled by staff, duplicate legal documents if the inmate demonstrates that more than one copy must be submitted to court and that the duplication cannot be accomplished by use of carbon paper.  The inmate shall bear the cost, and the duplication shall be done so as not to interfere with regular institution operations.  Staff may waive the cost if the inmate is without funds or if the material to be duplicated is minimal, and the inmate's requests for duplication are not large or excessive.]**

To prevent abuses of this provision (e.g., inmate shows a pattern of depleting his or her commissary funds prior to requesting duplication of legal documents), the Warden may impose restrictions on the provisions of this subsection.  In such cases, staff may request that the inmate complete the appropriate form for reimbursement (BP-CMS-21/24) for the amount of legal copies received at government expense.  Commissary staff will

hold the BP-CMS-21/24 form and charge the reimbursement against
the inmate's account as soon as the inmate has funds (see the
Trust Fund/Warehouse/Laundry Manual.)

   **[h.  Unless clearly impractical, the Warden shall allow an
inmate preparing legal documents to use a typewriter, or if the
inmate cannot type, to have another inmate type his documents.
The Warden may allow the inmate to hire a public stenographer to
type documents outside the institution, but the institution may
not assume the expense of hiring the public stenographer.  Staff
shall advise the inmate of any delay in the typing of which they
have received notice from the stenographer.**

   **i.  The Warden shall give special time allowance for research
and preparation of documents to an inmate who demonstrates a
requirement to meet an imminent court deadline.  Otherwise, each
inmate shall continue his regular institutional activities
without undue disruption by legal activities.]**

   Inmates who request time to do legal research and preparation
for filing legal documents during their regularly scheduled work
time may be required to do so first during all available leisure
time.  When such requests are made, staff may also authorize the
inmate to work reduced hours.  For example, an inmate may be
allowed mornings to do legal research, work in the afternoons,
and then use evenings for further research.  The Regional Counsel
may be consulted regarding such arrangements.

   **[j.  With consideration of the needs of other inmates and the
availability of staff and other resources, the Warden shall
provide an inmate confined in disciplinary segregation or
administrative detention a means of access to legal materials,
along with an opportunity to prepare legal documents.  The Warden
shall allow an inmate in segregation or detention a reasonable
amount of personal legal materials.  In no case shall the amount
of personal legal materials be such as to pose a fire,
sanitation, security, or housekeeping hazard.]**

   A reasonable amount of personal legal material in segregation
or detention is approximately one cubic foot.  Greater amounts
may be allowed when an inmate has an imminent court deadline.
The Regional Counsel should be consulted before accumulation of
legal materials is limited for housekeeping reasons.

11.  [<u>RETENTION OF ATTORNEYS</u> §543.12

   a.  The Warden shall allow an inmate to contact and retain
attorneys.  With the written consent of the inmate, staff may
advise an attorney of the inmate's available funds.  Staff may
not interfere with selection and retention of attorneys if the
inmate has attained majority and is mentally competent.  If the
inmate is a mental incompetent or a minor, the Warden shall refer
to the inmate's guardian or to the appropriate court all matters
concerning the retention and payment of attorneys.]

   The Warden must ensure that a list of legal resources
(including attorneys acting pro bono or through an established
legal aid program at the institution) is made available.

   [b.  The Bureau of Prisons may not act as guarantor or
collector of fees.  As to correspondence with attorneys and
telephone calls to attorneys, see part 540 of this chapter.]

   Part 540 refers to the Program Statement on Correspondence and
the Program Statement on Telephone Regulations for Inmates.

12.  [<u>VISITS BY ATTORNEYS</u> §543.13

   a.  The Warden shall, under the conditions of this section,
permit visits by the retained, appointed, or prospective attorney
of an inmate or by an attorney who wishes to interview an inmate
as a witness.

   b.  The Warden generally may not limit the frequency of
attorney visits since the number of visits necessary is dependent
upon the nature and urgency of the legal problems involved.  The
Warden shall set the time and place for visits, which ordinarily
take place during regular visiting hours.  Attorney visits shall
take place in a private conference room, if available, or in a
regular visiting room in an area and at a time designed to allow
a degree of privacy.  The Warden may make exceptions according to
local conditions or for an emergency situation demonstrated by
the inmate or visiting attorney.]

   To the extent practicable, staff are to provide an area for
attorney-client visits that ensures their conversation has a high
degree of privacy.

   [c.  The attorney shall make an advance appointment for the
visit through the Warden prior to each visit; however, the Warden
shall make every effort to arrange for a visit when prior
notification is not practical.

**d.  The Warden may require an attorney to indicate where he is licensed as an attorney and how that fact may be verified.  Prior to each appointment or visit, the Warden shall require each attorney to identify himself and to confirm that he wishes to visit an inmate who has requested his visit or whom he represents or whom he wishes to interview as a witness.  The Warden may not ask the attorney to state the subject matter of the lawsuit or interview.  If there is any question about the identity of the visitor or his qualification as an attorney in good standing, the Warden shall refer the matter to the Regional Counsel.**

**e.  Staff may not subject visits between an attorney and an inmate to auditory supervision.  The Warden may permit tape recordings to be used by an attorney during the course of a visit only if the attorney states in writing in advance of the interview that the sole purpose of the recording is to facilitate the attorney-client or attorney-witness relationship.]**

Ordinarily, the use of any other electronic device (for example, videotape recorders or computers) are not to be permitted.  The Warden may permit such use, however, if it is shown that such use is absolutely essential to facilitate the attorney-client relationship, and such use would not be inconsistent with the institution's maintenance of security, good order, or discipline.  The Visiting Attorney Statement (BP-S241.013) is a sample of a statement which institution staff may reproduce locally.

**[f.  The Warden may, at any time, subject an attorney to a search of his person and belongings for the purpose of ascertaining if contraband is present, as a condition of visiting an inmate.]**

Procedures for the exchange of legal documents in the visiting room should be placed either in an Institution Supplement on Legal Activities or in the required Institution Supplement on Visiting.

13.  **[LIMITATION OR DENIAL OF ATTORNEY VISITS AND CORRESPONDENCE §543.14**

**a.  An act by an attorney which violates Bureau regulations or institution guidelines and which threatens the security, good order, or discipline of the institution is grounds for limitation**

or denial by the Warden of the attorney's privileged visitation and correspondence rights.  Acts by an attorney which may warrant such limitation or denial include, for example, the following:

(1)  A false statement as to the attorney's identity or qualifications;

(2)  A plan, attempt, or act to introduce contraband into the institution;

(3)  A conspiracy to commit, an attempt to commit, or the actual commission of an act of violence within an institution; and

(4)  Encouraging an inmate to violate the law, Bureau of Prisons rules, or local implementing guidelines.

b.  Unless the breach of regulations is extreme or repeated, limitation rather than a denial of visitation or correspondence rights is proper, especially where the inmate is represented by the attorney and is confronted with a court deadline.  For example, the Warden may subject an attorney to a search of his person and belongings or may permit the attorney only non-privileged correspondence.  The Warden shall also consider referral of the matter to the state agency regulating the attorney's professional conduct.]

The Warden must consult with the Regional Counsel before taking action under this subsection.

[c.  An act by an inmate in violation of Bureau regulations or institution guidelines warrants a limitation by the Warden of the inmate's correspondence or visiting rights with attorneys only if necessary to protect institution security, good order, or discipline.  The Warden may not deny correspondence or visiting rights with attorneys generally.]

The Warden must consult with the Regional Counsel before taking action under this subsection.


[d.  The attorney may appeal any limitation or denial by the Warden of attorney visits or correspondence rights to the Regional Director.  The inmate affected may appeal through the Administrative Remedy Procedures.]

14.  **[LEGAL AID PROGRAM** §543.15

   a.  **A legal aid program which is funded or approved by the Bureau is expected to provide a broad range of legal assistance to inmates.  Staff shall allow these programs generally to operate with the same independence as privately retained attorneys.  The Warden shall refer a request or decision to terminate or restrict a program, or individual participants in a program, to the Regional Counsel.**

   b.  **In order to promote the inmate-program relationship, the Warden shall give those students or legal assistants working in legal aid programs the same status as attorneys with respect to visiting and correspondence except where specific exceptions are made in this section and in part 540 of this chapter.]**

   Part 540 refers to the Program Statement on Correspondence.

   **[c.  An attorney or law school professor shall supervise students and legal assistants participating in the program.  The supervisor shall provide the Warden with a signed statement accepting professional responsibility for acts of each student or legal assistant affecting the institution.  The Warden may require each student or legal assistant to complete and sign a personal history statement and a pledge to abide by Bureau regulations and institution guidelines.  If necessary to maintain security or good order in the institution, the Warden may prohibit a student or legal assistant from visiting or corresponding with an inmate.]**

   When an attorney requests that a student or legal assistant be allowed to correspond or visit an inmate, staff ordinarily should confirm the request by completing the Paralegal or Legal Assistant Confirmation (BP-S242.013).  This confirmation should be given or sent to the supervising attorney, along with the Application to Enter Institution as Representative (BP-S243.013).  The Warden may require each student or legal assistant to complete a BP-S243.013.  The form may be reproduced locally.

   The Warden must consult with the Regional Counsel if there is a question regarding the qualifications of a participant before a final determination is made, or on any recommendation or decision to limit or prohibit a student or legal assistant.

15.   [<u>OTHER PARALEGALS, CLERKS, AND LEGAL ASSISTANTS</u> §543.16

   **a.   The Bureau of Prisons recognizes the use of assistants by attorneys to perform legal tasks and, with proper controls and exceptions enumerated in this section and in part 540 of this chapter, accords such assistants the same status as attorneys with respect to visiting and correspondence.]**

   Part 540 refers to the Program Statement on Correspondence.

   The special visiting/correspondence status accorded to paralegals, clerks, and legal assistants depends upon an ongoing, supervisory relationship with an attorney on an approved visiting/correspondence list.  Absent any current supervisory relationship, such persons may only receive social visiting or general correspondence privileges.

   A request by a paralegal, law clerk, or legal assistant for social visiting/general correspondence privileges must be evaluated and considered on the same basis as requests from non-legal persons.

   The Warden must consult with the Regional Counsel if there is a question regarding the status of such persons before making a final determination, or any recommendation or decision to limit or prohibit the visiting/correspondence privileges of such persons.

   **[b.   The attorney who employs an assistant and who wishes the assistant to visit or correspond with an inmate on legal matters shall provide the Warden with a signed statement including:**

        **(1)   Certification of the assistant's ability to perform in this role and awareness of the responsibility of this position;**

        **(2)   A pledge to supervise the assistant's activities; and**

        **(3)   Acceptance of personal and professional responsibility for all acts of the assistant which may affect the institution, its inmates, and staff.  The Warden may require each assistant to fill out and sign a personal history statement and a pledge to abide by Bureau regulations and institution guidelines.  If necessary to maintain security or good order in the institution, the Warden may prohibit a legal assistant from visiting or corresponding with an inmate.]**

   The Warden may require each paralegal, clerk, or legal assistant to complete a BP-S243.013.

16.    **ADMINISTERING OATHS AND ACKNOWLEDGMENTS.**  28 U.S.C. § 1746 provides that an unsworn declaration under penalty of perjury may be used with "like force and effect" as a sworn declaration, verification, certification, statement, oath, or affidavit, when such action is required by any law, rule, regulation, order, or requirement of the United States.  Exceptions specified in the statute are a deposition, an oath of office, and an oath required to be taken before a specified official other than a notary public.

Since most documents inmates sign are pursuant to a United States law, rule, or regulation, a sworn oath is often not required.

When an unsworn declaration is not sufficient, 18 U.S.C. § 4004 authorizes specified Bureau staff to administer oaths and take acknowledgments of officers, employees, and inmates.  Thus, while state and local laws may often refer only to a notary public (or similar officials) because they are the only officials authorized by state law to administer oaths and witness signatures, Federal law also authorizes certain Bureau officials to perform such functions in Federal prisons.

   a.  **Unsworn Declarations**.  Other than for the exceptions cited above, staff need not administer oaths and witness inmate signatures on any documents to be filed in Federal courts or with Federal agencies, unless directly instructed to do so by the Court or agency.  Inmates may make their own unsworn declaration on such documents by placing the following paragraph at the end of the document:

       "I declare (or certify, verify or state), under penalty of perjury, that the foregoing is true and correct.  Executed on (date)."


                            _____
                              (Signature)

   b.  **Oaths**.  Unsworn declarations are not legally sufficient for declarations on depositions, for oaths of office, or for oaths required to be taken before an official other than a notary

public.  In addition, documents for submission to state courts and state agencies may require a sworn declaration.  For such documents, it is Bureau policy to administer oaths prior to witnessing the signatures of persons executing these documents.

(1)  **Administering Oaths**.  Title 18 U.S.C. § 4004 provides:

> **"The wardens and superintendents, associate wardens and superintendents, chief clerks, and record clerks, of Federal penal or correctional institutions, may administer oaths to and take acknowledgments of officers, employees, and inmates of such institutions, but shall not demand or accept any fee or compensation therefor."**

For the purpose of this Program Statement, institution Case Managers are considered to be chief clerks.

The person giving the oath must face the oath administrator and raise his or her right hand while the administrator states:

> You do solemnly, sincerely, and truly swear that the various matters and things set forth in this paper which you are about to sign before me are true, and that you do this under the pains and penalties of perjury.

After receiving the affirmative answer, the proper stamp is to be affixed in the necessary places, and the paper(s) duly signed by parties in the places provided.

(2)  **Administering Affirmations**.  Affirmations are to be offered for individuals who cannot or do not wish to swear or take oaths.

The person giving the affirmation must face the affirmation administrator and raise his or her right hand while the administrator states:

> You do solemnly, sincerely, and truly affirm and declare that the various matters and things set forth in this paper which you are about to sign before me are true, and that you do this under the pains and penalties of perjury.

After receiving the affirmative answer, the proper stamp is to be affixed in the necessary places, and the paper(s) duly signed by parties in the places provided.

     (3) **Stamps.**  The following shall be the wording of the stamps used:

    _____(name)_____, _____(title)_____,
Authorized by the Act of July 7, 1955, as amended, to administer oaths (18 U.S.C. § 4004).


     (4) **Validity of Witnessing.**  Any document witnessed without the initiator's taking the oath or affirmation may be invalid. The witnessing of a person's signature in no way is a representation by the witness as to the validity of the material or its contents, but is an indication that the document has been signed by the individual whose signature appears thereon.

  c. **Staff Responsibility.**  Each Warden will assign an employee to instruct appropriate personnel in the proper procedures to follow in witnessing signatures and in giving affirmations.  Each person issued a stamp is responsible for its control and safekeeping, so it will not be available to unauthorized persons.



                                    /s/
                                    Kathleen Hawk Sawyer
                                    Director

## REQUIRED MAIN LAW LIBRARY MATERIALS

1.  REPORTERS:

    a. <u>United States Supreme Court Reports</u> (Lawyers' Edition 2d Series), Volume 4-26, 37-present (Lexis Law Publishing Co.)  (New institutions should order Volumes 4 - present).

    b. <u>Supreme Court Reporter</u>, Volumes 91 - 93A (West Group) (New institutions do not order.)

    c. <u>Decisions of the United States Supreme Court</u>, 1964 - present (Lexis Law Publishing Co.).

    d. <u>Federal Reporter, 2d Series</u>, Volumes 267 - 999 (West Group).

    e. <u>Federal Reporter, 3d Series</u>, Volumes 1 - present (West Group).

    f. <u>Federal Supplement</u>, Volumes 173 - present (West Group).

    g. <u>Maryland Reporter</u>, volumes 91 - present (contains District of Columbia Court of Appeals cases that are also published in the Atlantic 2nd Reporter)  (West Group).

    h. <u>Military Justice Reporter</u>, Volume 36 No. 1 - present (West Group) (new institutions should order complete set).

    i. <u>Criminal Law Reporter</u> (new institutions purchase first annual subscription; subsequent subscriptions ordered by Central Office) (BNA).

2.  STATUTES:

    a. <u>United States Code Annotated</u>, complete set (West Group).

    b. <u>United States Constitution</u>, including Amendments (West Group).

    c. <u>District of Columbia Code Annotated</u>, complete set (Michie Publishing Co.).

3.  RULES:

    a. <u>Federal Civil Judicial Procedures & Rules</u> (West Group).

    b. <u>Federal Criminal Code & Rules</u> (West Group).

    c. <u>Military Rules of Evidence Manual</u>, Saltzburg, Schinasi &

PS 1315.07
11/5/99
Attachment A, Page 2

Schlueter (Michie Publishing Co.).

4.  REGULATIONS:

    a. Title 8 of the Code of Federal Regulations
    (U.S. Government Printing Office).

    b. Title 21 of the Code of Federal Regulations, chapter II,
    Part 1300 to end (U.S. Government Printing Office).

    c. Title 28 of the Code of Federal Regulations
    (U.S. Government Printing Office).

5.  PROGRAM STATEMENTS:

    a. All current Bureau of Prisons Program Statements which
    contain rules codified in Chapters III or V of Title 28 of
    the Code of Federal Regulations.

    b. Any other Program Statement or Institution Supplement
    that the Warden may deem to be of interest to the inmate
    population, except for those documents that are restricted.

6.  OTHER MATERIALS:

    a. American Jurisprudence 2d edition, complete set.
    (West Group).

    b. Black's Law Dictionary (West Group).

    c. Complete Manual of Criminal Forms, Bailey and Rothblatt
    (West Group).

    d. Constitutional Rights of Prisoners, Palmer (Anderson
    Publishing Co.).

    e. Law of Sentencing, Corrections and Prisoners' Rights,
    Krantz (West Group).

    f. Criminal Practice Institute Trial Manual, two volumes
    (Public Defenders Service).

    g. Criminal Procedure in a Nutshell, Israel and LaFave
    (West Group).

    h. Court Martial Reports Index and Citator, (Loaned by
    Central Office Library).

i. <u>Federal Habeas Corpus Practice and Procedure</u>, Liebman and Hertz (Michie Publishing Co.) (all volumes and supplements).

j. <u>Immigration Law and Procedure</u>, Gordon and Gordon (one volume)  (Matthew Bender Publishing Co.).

k. <u>Legal Research in a Nutshell</u>, Cohen and Kent (West Group).

l. <u>Legal Research and Writing: Some Starting Points</u>, Statsky (West Group).

m. <u>Manual de Pautaus</u>, Zapp (Publicaciones Legales en Espanol, Inc.).

n. <u>Manual for Courts-Martial, 1995</u>, United States (U.S. Government Printing Office).

o. <u>Manual for Prison Law Libraries</u>, Werner (Rothman Publishing Co.).

p. <u>Military Criminal Justice: Practice and Procedure</u>, Schlueter, 1982 Edition and Supplements (Michie Publishing Co.).

q. <u>Military Justice Digest</u> (West Group).

r. <u>Modern Criminal Procedure</u>, Israel and Kamisar (West Group).

s. <u>Prisoners' Assistance Directory</u> (The National Prison Project)

t. <u>Shepard's</u>, for District of Columbia (Shepard's).

u. <u>Shepard's United States Citations</u> (Shepard's).

v. <u>Shepard's Federal Citations</u> (Shepard's).

w. <u>Spanish/English Law Dictionary</u>, Solis (West Group).

x. <u>United States Supreme Court Digest Annotated</u> (complete set) (Lexis Law Publishing Co.).

y. <u>ABA's Family Legal Guide</u> (Random House).

PS 1315.07
11/5/99
Attachment B, Page 1

<u>REQUIRED MATERIALS FOR SATELLITE CAMP LAW LIBRARIES</u>

1.  REPORTERS:

     a. <u>Decisions of the United States Supreme Court</u>,
     1964 - present. (Lexis Law Publishing Co.).

     b. <u>Federal Reporter, 2d Series</u>, Volumes 604 - 999
     (West Group).

     c. <u>Federal Reporter, 3d Series</u>, Volumes 1 - present
     (West Group).

     d. <u>Criminal Law Reporter</u> (new institutions purchase first
     annual subscription; subsequent subscriptions ordered by
     Central Office) (BNA).

2.  STATUTES:

     a. <u>United States Code Annotated</u>.  (West Group).
     (Pamphlet volumes not included)

          (1) Title 5, sections 1 - 5100.

          (2) Title 18, complete.

          (3) Title 21, complete.

          (4) Title 26, sections 3101 to end.

          (5) Title 28, volumes containing the Rules of the
          United States Supreme Court, United States Court of
          Appeals Rules and Federal Rules of Appellate Procedure.

          (6) Title 28, sections 2201 to end.

          (7) Title 42, sections 1771 - 2010.

     b. <u>United States Constitution</u> and Amendments, (complete).

3.  RULES:

     a. <u>Federal Civil Judicial Procedures & Rules</u> (West Group).

     b. <u>Federal Criminal Code & Rules</u> (West Group).

4.  REGULATIONS:

Title 28 of the Code of Federal Regulations
(U.S. Government Printing Office) (three copies).*

5.  PROGRAM STATEMENTS:

a. All current Bureau of Prisons Program Statements which
contain rules codified in Chapters III or V of Title 28 of
the Code of Federal Regulations.

b. Any other Program Statement or Institution Supplement
that the Warden may deem to be of interest to the inmate
population, with the exception of those documents that are
restricted.

6.  OTHER MATERIALS:

a. Black's Law Dictionary (West Group).

b. Complete Manual of Criminal Forms, Bailey and Fishman
(West Group).

c. Constitutional Rights of Prisoners, Palmer
(Anderson Publishing Co.).

d. Law of Sentencing, Corrections and Prisoners' Rights,
Krantz (West Group).

e. Criminal Procedure in a Nutshell, Israel and LaFave
(West Group) (three copies).*

f. Federal Habeas Corpus Practice and Procedure, Liebman and
Hertz (Michie Publishing Co.) (all volumes and supplements)
(two copies).*

g. Legal Research in a Nutshell, Cohen and Kent (West Group)
(three copies).

h. Legal Research and Writing: Some Starting Points, Statsky
(West Publishing Co.).

i. Manual for Courts-Martial, 1995, United States
(U.S. Government Printing Office).

j. Modern Criminal Procedure, Israel and Kamisar
(West Group).

k. <u>Prisoners' Assistance Directory</u> (The National Prison Project).

l. <u>ABA's Family Legal Guide</u>, (Publications International Ltd.).

\*    These copies may be loaned to other inmate law libraries at the Supervisor of Education's discretion.

PS 1315.07
11/5/99
Attachment C, Page 1

REQUIRED MATERIALS FOR BASIC LAW LIBRARIES

1.  REPORTERS:

   a. <u>Decisions of the United States Supreme Court</u>,
   1964 - present. (Lexis Law Publishing Co.).

   b. <u>Criminal Law Reporter</u> (new institutions purchase first
   annual subscription; subsequent subscriptions ordered by
   Central Office) (BNA).

2.  STATUTES:

   a. <u>United States Code Annotated</u>.  (West Group).
        (Pamphlet volumes not included)

      (1) Title 5, sections 1 - 5100.

      (2) Title 18, complete.

      (3) Title 21, complete.

      (4) Title 26, sections 3101 to end.

      (5) Title 28, volumes containing the Rules of the
      United States Supreme Court, United States Court of
      Appeals Rules and Federal Rules of Appellate Procedure.

      (6) Title 28, sections 2201 to End.

      (7) Title 42, sections 1771 - 2010.

   b. <u>United States Constitution</u> and Amendments, (complete).

3.  RULES:

   a. <u>Federal Civil Judicial Procedures & Rules</u> (West Group).

   b. <u>Federal Criminal Code & Rules</u> (West Group).

4.  REGULATIONS:

   a. Title 28 of the Code of Federal Regulations
   (U.S. Government Printing Office).

PS 1315.07
11/5/99
Attachment C, Page 2

5.  PROGRAM STATEMENTS:

a. All current Bureau of Prisons Program Statements which contain rules codified in Chapters III or V of Title 28 of the Code of Federal Regulations.

b. Any other Program Statement or Institution Supplement that the Warden may deem to be of interest to the inmate population, with the exception of those documents that are restricted.

6.  OTHER MATERIALS:

a. <u>Black's Law Dictionary</u> (West Group).

b. <u>Complete Manual of Criminal forms</u>, Bailey and Fishman (West Group).

c. <u>Constitutional Rights of Prisoners</u>, Palmer (Anderson Publishing Co.).

d. <u>Law of Sentencing, Corrections and Prisoners' Rights</u>, Krantz (West Group).

e. <u>Criminal Procedure in a Nutshell</u>, Israel and LaFave (West Group).

f. <u>Federal Habeas Corpus Practice and Procedure</u>, Liebman and Hertz (Michie Publishing Co.) (all volumes and supplements).

g. <u>Legal Research in a Nutshell</u>, Cohen (West Group).

h. <u>Legal Research and Writing: Some Starting Points</u>, Statsky (West Group).

i. <u>Manual for Courts-Martial, 1995</u>, United States (U.S. Government Printing Office).

j. <u>Modern Criminal Procedure</u>, Israel and Kamisar (West Publishing Co.).

k. <u>Prisoners' Assistance Directory</u> (The National Prison Project).

l. <u>ABA's Family Legal Guide</u>, (Publications International Ltd.).

BP-S241.013  VISITING ATTORNEY STATEMENT,
is available on BOPDOCS

BP-S242.013  PARALEGAL OR LEGAL ASSISTANT CONFIRMATION,
is available on BOPDOCS.

PS 1315.07
11/5/99
Attachment F, Page 1

BP-S243.013  APPLICATION TO ENTER INSTITUTION AS REPRESENTATIVE,
is available on BOPDOCS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VAMPIRE NATION and FREDERICK BANKS,)
                                   )
          Plaintiffs,              )
                                   )
     v.                            ) Civil Action No. 06-1950 EGS
                                   )
DEPARTMENT OF JUSTICE, <u>et al.</u>,     )
                                   )
          Defendants.              )
_____)

<u>ORDER</u>

UPON CONSIDERATION of defendants' Renewed Motion To Dismiss Or, In The Alternative, For Summary Judgment, the grounds stated therefor, and the entire record herein, it is this ___ day of _____, 2008, hereby

ORDERED that Defendants' motion should be and it hereby is granted; and it is,

FURTHER ORDERED that what remains of plaintiff's complaint be and hereby is dismissed.


                         _____
                         UNITED STATES DISTRICT JUDGE



W. MARK NEBEKER              VAMPIRE NATION
Assistant U.S. Attorney     613 Cross Street
Civil division              East McKeesport, PA  15035
555 4th Street, N.W.
Washington, DC  20530       FREDERICK BANKS
                            No. 05711-068
                            PO Box 999
                            Butner, NC  27509