# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDERICK BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )    Civil Action No. 06-1950 (EGS) |
| | ) |
| DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court on defendants' Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment.[1]  For the reasons discussed in this Memorandum Opinion, the Court will grant defendants' motion in part and deny it in part.

### I.  BACKGROUND

Plaintiff filed a ten-count Complaint under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a, against various government entities alleging their failure to release requested information about himself and other individuals.

On Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [#20] ("Defs.' Mot."), the Court dismissed plaintiff's claims against the Office of Probation and the Administrative Office for United States Courts because neither is a government agency to which the FOIA and the Privacy Act applies.  *Banks v. Dep't of Justice*, 538 F. Supp. 2d 228, 231-32 (2008).  The Court granted summary judgment with respect to the Financial Crimes Enforcement

---

[1]    Plaintiff's Motion for Interlocutory Judgment Pursuant to 5 U.S.C. § 552a(a) [#46] is wholly without merit and will be dismissed.

Network, the United States Department of State, and the United States Postal Investigation

Service ("USPIS") (March 2006 request only) because plaintiff failed to submit requests to these

entities and thereby failed to exhaust his administrative remedies before filing this action. *Id.* at

233-35.  In addition, because plaintiff did not pay fees associated with his requests to the

Executive Office for United States Attorneys ("EOUSA"), the Court granted summary judgment

in favor of the EOUSA because, again, plaintiff failed to exhaust his administrative remedies

before filing this action. *Id.* at 235-37.  The United States Marshals Service ("USMS")

established its full compliance with the FOIA and the Privacy Act, and, therefore, the Court

granted summary judgment in its favor. *Id.* at 239-41.

The Court denied defendants' motion in part because (1) neither the Federal Bureau of

Prisons ("BOP") nor the USPIS established that its search for records responsive to plaintiff's

FOIA and Privacy Act requests was reasonable. *Banks*, 538 F. Supp. 2d at 238-39.  The Court

deferred consideration of the response of the Federal Bureau of Investigation ("FBI") pending its

review of records it had located by searching its Central Records System. *Id.* at 237 n.7.

Before the Court on defendants' Renewed Motion to Dismiss or, in the Alternative, for

Summary Judgment [#32] are pending issues regarding plaintiff's FOIA and Privacy Act requests

to the FBI, the BOP, and the USPIS.

## II.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

Defendants again move to dismiss all claims against the BOP, the FBI, and the USMS

"due to Plaintiff's failure to satisfy his obligations to pay for the documents received from the

[EOUSA], another component of the Department of Justice."[2]  Mem. of P. & A. in Support of

Renewed Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Renewed Mot.") at 3.  By

failing to pay fees, defendants argue that plaintiff's FOIA and Privacy Act claims are subject to

dismissal for failure to exhaust administrative remedies, *see id.* at 3-6, as "[e]xhaustion does not

occur until the required fees are paid or until an appeal is taken from the refusal to waive fees."

*Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 66 (D.C. Cir. 1990).

1. <u>Assessment and Aggregation of Search and Duplication Fees</u>

Regulations promulgated by the United States Department of Justice ("DOJ") specify,

among other things, "the schedule of fees applicable to the processing of requests . . . and . . . the

procedures and guidelines for determining when such fees should be waived or reduced."  5

U.S.C. § 552(a)(4)(A)(i); *see* 28 C.F.R. § 16.1 *et seq.*  For purposes of these regulations, the term

"component" means "each separate bureau, office, board, division, commission, service, or

administration of the Department of Justice," 28 C.F.R. § 16.1(b), and the EOUSA, FBI and BOP

are DOJ components.  *See* 28 C.F.R. § 0.1 (setting forth DOJ's organizational units).  Requests

submitted under the Privacy Act by individuals for records about themselves are processed under

these regulations also.  *See* 28 C.F.R. §§ 16.1(a), 16.40(a).

DOJ components "may charge for time spent searching even if they do not locate any

responsive record or if they withhold the record(s) located as entirely exempt from disclosure,"

28 C.F.R. § 16.11(c)(1)(i), and for paper photocopies, 28 C.F.R. § 16.11(c)(2).  If the requester is

not seeking records for a commercial purpose, "components will provide without charge: (i) [t]he

first 100 pages of duplication . . . ; and (ii) [t]he first two hours of search . . .."  28 C.F.R. §

---

[2]        The Court already has granted summary judgment with respect to plaintiff's
requests to the USMS, *see Banks*, 538 F. Supp. 2d at 239-41, and declines to disturb this ruling.

16.11(d)(3).  "[C]omponent[s] ordinarily shall collect all applicable fees before sending copies of requested records to a requester."  28 C.F.R. § 16.11(a); *see* 5 U.S.C. § 552(a)(4)(A)(v) (authorizing advance payment of a fee if "the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250") .

Pursuant to 5 U.S.C. § 552(a)(6)(B)(vi), DOJ regulations also provide for the aggregation of requests:

> Where a component reasonably believes that a requester or a group of requesters acting together is attempting to divide a request into a series of requests for the purpose of avoiding fees, the component may aggregate those requests and charge accordingly.  Components may presume that multiple requests of this type made within a 30-day period have been made in order to avoid fees.  Where requests are separated by a longer period, components will aggregate them only where there exists a solid basis for determining that aggregation is warranted under all the circumstances involved.  Multiple requests involving unrelated matters will not be aggregated.

28 C.F.R. § 16.11(h).  "Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 days of the date of billing, a component may require the requester to pay the full amount due, plus any applicable interest, and to make an advance payment of the full amount of any anticipated fee, before the component begins to process a new request or continues to process a pending request from that requester."  28 C.F.R. § 16.11(i)(3) (emphasis added).  "In cases in which a component requires advance payment or payment due under [28 C.F.R. § 16.11(i)(3)], the request shall not be considered received and further work will not be done on it until the required payment is received."  28 C.F.R. § 16.11(i)(4).

## 2.  Requests to the EOUSA

To place the defendants' exhaustion argument in context, one must recall plaintiff's FOIA

and Privacy Act requests to the EOUSA.  Relevant to this discussion is his January 4, 2005

request for "all records under the FOIA/PA maintained by [the EOUSA] on himself and an entity

. . . identified as Vampire Nation."[3]  Notice of Filing [#23], Declaration of John F. Boseker

("Boseker Decl.") ¶ 4.

Plaintiff asked that searches be performed in the Western District of Pennsylvania

("USAO/WDPA"), the District of Columbia, the Northern District of Ohio, the District of

Colorado, the Eastern District of California, and the Middle District of Florida.  Boseker Decl. ¶

4.  Because plaintiff asked the EOUSA to "perform searches in multiple USAOs," *id*., the

EOUSA "created multiple files to reflect the several searches to be performed."  *Id.* ¶ 6.

Plaintiff's request to the USAO/WDPA for all information about himself in criminal files was

assigned FOIA No. 05-61, *id.* ¶¶ 6, 11, and the request to the USAO/WDPA for information

pertaining to Vampire Nation was assigned FOIA No. 05-1622.  *Id*. ¶ 38.

### FOIA No. 05-61 (Self)

When the EOUSA acknowledged its receipt of FOIA No. 05-61, Boseker Decl. ¶ 11, it

notified plaintiff of his obligation to pay fees and informed plaintiff that, "should [fees] be

assessed and go unpaid, his file would be closed and no documents [would be] released until

payment was made."  *Id*.  The agency's written notification also advised plaintiff that, "[i]n

accordance with 5 [U.S.C. §] 552(a)(6)(B)(vi) providing for aggregating requests, the search

times and duplication fees for all districts requested would be aggregated."  *Id.*; *see id*. Ex. F

---

[3]        Plaintiff describes himself as a "musician, international recording artist and record
producer, writer, and filmmaker," and states that Vampire Nation is a business of which he is the
sole proprietor.  Plaintiff's Response in Opposition to Defendants' Motion to Dismiss or in the
Alternative for Summary Judgment [#24] at 1.  He "refer[s] to his company Vampire Nation as a
'dark electronic music project' . . . [as a] promotion style [that] is not of any consequence to this
lawsuit."  *Id*.

(January 13, 2005 letter from M.A. O'Rourke, Assistant Director, Freedom of

Information/Privacy Act Unit, EOUSA).  Subsequently, the EOUSA notified plaintiff that "while

no search time was estimated to exceed the two free hours in [the USAO/WDPA], there were

approximately 2000 pages of potentially responsive records, and that at ten cents per page after

the first 100 free pages, the likely charge would exceed $25.00." *Id.* ¶ 12.  As is required under

28 C.F.R. § 16.11(e), the EOUSA sought plaintiff's agreement "to pay the anticipated excess fees

or [to] reformulate his request to potentially reduce that sum, understanding that until he had

done so, his request was not considered received and no further work would be performed." *Id.*;

*see id.*, Ex. G (February 11, 2005 letter from M.A. O'Rourke).   Plaintiff agreed to pay the

anticipated duplication fee, *see id.*, Ex. H, and the EOUSA processed the USAO/MDPA records.

*Id.* ¶ 14.  The EOUSA "was prepared to release 36 pages in full, 16 pages in part, and was

withholding approximately 300 pages in full." *Id.*  However, the EOUSA would not release any

record until plaintiff paid the search fee:

> **In our letter dated July 12, 2005 that accompanied response file
> number 05-1625** [United States Attorney's Office for the District of
> Colorado]**, we informed you of aggregated fees associated with
> your numerous request[s].**
>
> After reviewing all the documents, we have determined that we can
> make a partial release.  You previously agreed to pay search and/or
> copying costs.  A **$ 168.00** search fee is being assessed for these
> records.  If you would like these records, please send a check or
> money order for **$ 168.00**, payable to the Treasury of the United
> States . . ..  **If payment is not received within 30 days from the
> date of this letter, your request will be closed and any future
> requests for records will be rejected until payment is received.**
> Please note that this may not be the final cost[] associated with
> processing your numerous requests.  There are still open requests (**05-
> 1623** [United States Attorney's Office for the District of Columbia]
> **and 05-1627** [United States Attorney's Office for the Middle District

> of Florida]) that will increase the final search/copying fees.  We will
> be able to determine the final costs after we have received responses
> from all of the districts in your requests.  We will notify you
> accordingly at that time.

*Id.*, Ex. I (August 8, 2005 letter M.A. O'Rourke) at 1 (bold type in original).

The EOUSA reminded plaintiff of his obligation to pay fees associated with his two

requests to the USAO/WDPA.  Boseker Decl. ¶ 19 & Ex. L (October 3, 2005 letter from M.A.

O'Rourke).  In relevant part, its letter stated:

> On August 8, 2005, (regarding 05-61) and on July 26, 2005
> (regarding 05-1622), we sent you letters indicating an estimate of
> aggregated fees charged for processing your [FOIA] requests.  We
> gave you at least 30 days to respond in order to receive the
> documents.  Since we have not heard from you in that time, your
> request files have been closed.
>
> **In order to clear up any confusion you may have
> regarding the fees charged for your requests, please be aware
> that you are being charged an aggregated fee of $168 for six (6)
> hours of search time that exceeded the two (2) hours which are
> free.**

*Id.* (bold type in original).  The EOUSA did not receive a response to its October 3, 2005 letter

and, accordingly, it closed the file because plaintiff refused to pay fees.  Boseker Decl. ¶ 18.

### FOIA No. 05-1622 (Vampire Nation)

The EOUSA notified plaintiff that it had located records at the USAO/WDPA pertaining

to Vampire Nation and determined that three pages could be released in full.  Boseker Decl. ¶ 39.

Its written notification included the same notice regarding fees and the aggregation of fees as was

provided with respect to FOIA No. 05-61.  *See id.*, Ex. FF (October 5, 2005 letter from M.A.

O'Rourke).  Because plaintiff did not pay the $168 fee within the 30-day time period, the

EOUSA closed his file with respect to FOIA No. 05-1622.  *Id.* ¶ 42.

The FBI relied on plaintiff's failure to pay search fees associated with the requests to the EOUSA when it required that plaintiff pay duplication fees in advance, as is described below.

### 3.  Requests to the FBI

In January 2005, plaintiff submitted requests under the FOIA and the Privacy Act for information about himself to the FBI's Washington, D.C. headquarters ("FBIHQ") and to FBI Field Offices in Pittsburgh, Washington, D.C., Cleveland, Atlanta, Seattle, Denver, Boulder and Los Angeles.  Notice of Filing [#34], Declaration of David M. Hardy ("Supp. Hardy Decl.") ¶¶ 5-6; *see id.*, Ex. A-B (January 15, 2005 and January 20, 2005 FOIA/PA Requests).  His request to the Pittsburgh Field Office ("PGFO") was assigned FOIPA Request No. 1012662-000.  *Id.* ¶ 8 & Ex. D (January 31, 2005 letter from D.M. Hardy, Section Chief, Records/Information Dissemination Section, Records Management Division, FBIHQ).  A search of automated indices located no records responsive to his requests to the FBIHQ and the Field Offices in Washington, D.C., Cleveland, Atlanta, Seattle, Denver, and Los Angeles.[4]  Supp. Hardy Decl. ¶ 11 & Ex. G (March 16, 2005 letter from D.M. Hardy).  However, "records potentially responsive to his request [to the PGFO] were located in a file containing approximately 3,205 pages."  *Id.* ¶ 15.[5] Its written notice to plaintiff stated that fees would be assessed:

> Pursuant to 28 C.F.R. § 16.11(c)(2), all documents found to be releasable will be subjected to a duplication cost of ten cents per page.  The first hundred pages of a release are provided at no cost.  28 C.F.R. § 16.11(d)(1)(*i*).  If all of the potentially responsive records are determined to be actually responsive and releasable, duplication costs would total $310.50.  In accordance with [DOJ] regulations, 28

[4]  The Boulder Resident Agency is part of the Denver Field Office and maintains no records separately.  Supp. Hardy Decl. ¶ 11 n.1.

[5]  The FBI previously had withheld these records in their entirety under Exemption 7(A), Supp. Hardy Decl. ¶ 11, and later determined that the exemption no longer applied after the investigation concerning plaintiff had been closed.  *Id.* ¶ 14 n.4.

C.F.R. § 16.11(i) and 16.49, since the estimated duplication fees exceed $250 and you have failed to pay a properly charged FOIA fee to another component of DOJ, we are requesting advance payment before processing commences.  No duplication fees will be assessed for pages that are withheld in their entireties pursuant to any FOIA/Privacy Act exemption.

*Id.*, Ex. K (April 9, 2008 letter from D.M. Hardy) at 1.  The FBI had been "advised by the [EOUSA] that [plaintiff had] failed to pay fees assessed by that office in response to a FOIA/PA request," and for this reason, the FBI "require[d] that [plaintiff] make advance payment of the total amount of estimated duplication fees before [it would] process more than the first 100 pages of records responsive to [his] request."  *Id.* at 2.  The FBI also informed plaintiff "about the possibility of . . . reducing the scope of his request in order to reduce the amount of fees or . . . paying nothing and receiving only the first 100 pages of responsive records."  Reply to "Plaintiff's Reply in Opposition to Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment" [#43], Ex. 3 ("Hardy II Decl.") ¶ 6; *see* Supp. Hardy Decl., Ex. K at 2-3. Plaintiff did not respond to the FBI's April 9, 2008 letter within the time limit specified, *see* Supp. Hardy Decl., Ex. K at 3, and, accordingly, the FBI "released 100 pages in response to plaintiff's January 15, 2005 FOIA/Privacy Act request to the PGFO."[6]  Hardy II Decl. ¶ 8.  These 100 pages represented "the number of responsive pages which must be provided to a non-commercial requester for free pursuant to 28 C.F.R. § 16.11(d)(3)(i)."  *Id.* ¶ 9.

### 4.  Plaintiff's Opposition

Plaintiff's response to defendants' renewed summary judgment motion is a "Motion to Advance Costs of FBI and EOUSA Documents" [#35].  He "moves the Court to order that the

---

[6]      The FBI withheld certain information from these 100 pages of records under FOIA Exemptions 2, 6, 7(C), and 7(E).  Hardy II Decl. ¶ 8.

United States advance costs for the release of 3,205 documents . . . or waive the fee, and to advance costs in the amount of $168.00 to the [EOUSA] for release of the records [plaintiff] sought in connection with this case and or waive the fee." Pl.'s Mot. to Advance Costs at 1; Plaintiff's Reply in Opposition to Renewed Motion to Dismiss or, in the Alternative for Summary Judgment [#38] ("Pl.'s Opp'n") at 1-2. He notes that he "of course will remain fully liable for these fees through his continuing obligation under 28 U.S.C. [§] 1915."[7] Pl.'s Mot. to Advance Costs at 1-2. Plaintiff presumes that there is some connection between his *in forma pauperis* status with respect to payment of the civil filing fee in this Court and his obligation to pay search and duplication fees to the DOJ with respect to his FOIA and Privacy Act requests. He is mistaken.

Generally, a plaintiff filing a civil action in a federal district must pay a fee of $350. 28 U.S.C. § 1914(a). Under 28 U.S.C. § 1915, the Court "may authorize the commencement . . of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1). Although the Court may allow a prisoner to proceed without prepayment of the filing fee, he "shall be required to pay the full amount of a filing fee," typically with an initial partial payment and monthly installment payments in amounts determined by the balance in the

---

[7]     The Court notes that plaintiff's application to proceed *in forma pauperis* in this action was granted before it was determined that he is barred from proceeding *in forma pauperis* under the "three strikes" provision of the Prison Litigation Reform Act, *see* 28 U.S.C. § 1915(g). *See, e.g., Banks v. United States Marshal*, 274 Fed. Appx. 631 (10th Cir. 2008) (declaring that Banks had accumulated four strikes for purposes of 28 U.S.C. § 1915(g) with the dismissal of two consolidated appeals); *Banks v. Lappin*, No. 08-0152, 2008 WL 2874193 (D.D.C. July 25, 2008) (concluding that plaintiff is barred under 28 U.S.C. § 1915(g) from proceeding *in forma pauperis*); *Banks v. Sutherland*, No. 08-0222, 2008 WL 2758664 (S.D. Miss. July 11, 2008) (denying application to proceed *in forma pauperis* under 28 U.S.C. § 1915(g)).

prisoner's trust fund account.  28 U.S.C. § 1915(b).  "In no event shall the filing fee collected

exceed the amount of fees permitted by statute for the commencement of a civil action."  28

U.S.C. § 1915(c).  Nothing in the statute authorizes the Court to collect funds from a prisoner in

excess of the $350 filing fee, and 28 U.S.C. § 1915 does not authorize the Court to advance costs

associated with a prisoner plaintiff's FOIA or Privacy Act requests.

  In the alternative, plaintiff asserts that "he has sent a request to the FBI requesting that the

fees be waived."  Pl.'s Opp'n at 2.  He argues that waiver of fees is in the public interest because

the release of the requested records would "see that justice is done" with respect to his criminal

case.  Renewed Motion to Advance Costs of FBI and EOUSA Documents [#41] at 1.  According

to plaintiff, the requested records include information that should have been disclosed to him

before or during his criminal trial.  *See id.*  He claims to have "a particularized need for the

withheld documents for his criminal appeals and to show another court the items the FBI

confiscated with <u>and without</u> a forfeiture order and authority to offset the amount of money

Banks is liable for in restitution."  Pl.'s Mot. to Advance Costs at 1 (emphasis in original).

Further, he asserts that "anything less" than an order directing the immediate release of the

requested records in their entirety "would violate [plaintiff's] Due Process rights under the Fifth

Amendment and effect [sic] the fundamental fairness of [plaintiff's] criminal and this civil and

the 2255 civil proceeding" because his "liberty is at stake."  Plaintiff's Reply to Defendants'

Memorandum in Opposition to Plaintiff Banks' "Renewed Motion to Advance Motion to

Advance Costs of FBI and EOUSA Documents" [#44] at 1.  Given this contrived connection

between this civil action and his criminal case and post-conviction proceedings, plaintiff

demands payment of the assessed search and duplication fees under the Criminal Justice Act.  *Id.*

at 2.  His arguments are not persuasive.

First, the FBI did not receive a request for waiver of fees, *see* Hardy II Decl. ¶ 10, and nothing in the record of this case suggests that plaintiff availed himself of options for reducing the scope of his request in order to reduce the amount of fees, *see id.* ¶ 15.

Second, even if plaintiff had requested a fee waiver and if the requested records were relevant to his criminal case or post-conviction proceedings, these facts do not establish that disclosure of the records is in the public interest.  DOJ regulations provide for the reduction or waiver of fees where a component determines, based on all available information, that the requester has demonstrated that:

> (i)    Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
>
> (ii)    Disclosure of the information is not primarily in the commercial interest of the requester.

28 C.F.R. § 16.11(k)(1).  To determine whether the first fee waiver requirement is met, components will consider, among other factors, "[w]hether disclosure of the requested information will contribute to 'public understanding.'"  28 C.F.R. § 16.11(k)(2)(iii).  "The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester."  *Id.*  A requester's private interest is not relevant to the fee waiver analysis, and an attack on a criminal conviction is a private interest.  *See McClain v. United States Dep't of Justice*, 13 F.3d 220, 220-21 (7th Cir. 1993) (denying fee waiver request of indigent prisoner who was pursuing a challenge to his criminal conviction using FBI records about himself); *Harrington v. Dep't of Justice*, No.

06-0254, 2007 WL 625853, at *4 (D.D.C. Feb. 27, 2007).

Third, the Criminal Justice Act provides for the appointment of counsel to represent indigent criminal defendants and for payment to these attorneys for time and services rendered. *See* 18 U.S.C. § 3006A(a), (d)(5).  Plaintiff is not an attorney, and this civil action is not a criminal proceeding to which the Criminal Justice Act applies.

The Court concludes that plaintiff failed to exhaust his administrative remedies with respect to his FOIA and Privacy Act requests to the FBI because he failed to pay duplication fees. The Court grants the defendants' motion as to Counts Three and Four of the Complaint, and plaintiff's request for the Court to advance fees is denied.

### B.  The BOP's Response to Plaintiff's FOIA and Privacy Act Requests

Plaintiff submitted three requests to the BOP under the FOIA and the Privacy Act.  Defs.' Renewed Mot., Supplemental Declaration of Kathleen Quigley ("Supp. Quigley Decl.") ¶ 3.  In the first, assigned Request Number 2006-00951, plaintiff sought "every record in [BOP's] system about [himself], that pertains to [him], or mentions [him] by name."  Defs.' Mot., Declaration of Kathleen Quigley ("Quigley Decl.") ¶ 4 & Ex. 1 (September 24, 2005 FOIA/PA Request), Ex. 2 (November 22, 2005 letter from H.J. Sadowski, Regional Counsel, Northeast Regional Office, BOP).

According to the BOP's supplemental declaration, an inmate's broad request for records about himself "is routinely interpreted as seeking records maintained in [that] inmate's Central and Medical Files, because those systems of records are the likely places to locate any records regarding an inmate."  Supp. Quigley Decl. ¶ 4.[8]  An inmate's Central and Medical Files

---

[8]        According to Program Statement 1351.05, Release of Information (9/19/2002),
                                                                                    (continued...)

ordinarily are located at the place of his incarceration, *id.*, and, accordingly, BOP staff forwarded

plaintiff's FOIA request to the United States Penitentiary Canaan ("USP Canaan") in Waymart,

Pennsylvania, the place of his incarceration at that time.  *Id.*  Staff at USP Canaan located and

copied plaintiff's entire Central and Medical files, Quigley Decl. ¶ 7, and the BOP released 103

pages in full and withheld four pages in full under FOIA Exemptions 5, 6, 7(C), and 7(F).  *Id.* ¶

8.

      Plaintiff's second request, assigned Request Number 2006-06384, sought "all database

records maintained by the BOP regarding Plaintiff."  Supp. Quigley Decl. ¶ 7; Quigley Decl. ¶ 10

& Ex. 5 (Renewed FOIA/PA Request).  Because the BOP "utilizes the Sentry database as its

tracking and information system for inmate-related information," its staff "performed a number

of database search functions that provide[d] a printout of all inmate[-]related information on

Sentry" pertaining to plaintiff.  Supp. Quigley Decl. ¶ 7.  The BOP released to plaintiff 23 pages

in full on June 19, 2006.  Quigley Decl. ¶ 11 & Ex. 6 (June 19, 2006 letter from H.J. Sadowski).

      In his third request, assigned Request Number 2006-07658, plaintiff sought "all central

file records maintained by the BOP regarding [himself]."  Supp. Quigley Decl. ¶ 8; Quigley Decl.

¶ 12.  By letter dated June 28, 2006, the BOP informed plaintiff that "he may seek local review of

his [C]entral [F]ile by contacting staff at USP Canaan to make arrangements for review."  Supp.

Quigley Decl. ¶ 9.

---

[8](...continued)
      A request for "my records," "all my records," or similar wording shall
      be interpreted as a request for a copy of Inmate Central File records
      and Medical File records currently maintained at the inmate's
      institution of confinement or, in the case of former inmates, in the last
      institution of confinement.

*Id.*, Part Four, para. 27.c.

Plaintiff opposes the BOP's motion by asserting, without supporting declarations or exhibits, that its "search was far from adequate." Pl.'s Opp'n at 1. He claims that he "never received <u>any</u> of the requested files," and that he has "filed multiple requests" without success. *Id.* The agency's declarations are presumed to be submitted in good faith and plaintiff's mere speculation cannot rebut the presumption. *See SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). The factual assertions in the BOP's declarations are accepted as true absent a showing by plaintiff of his own declarations or documentary evidence to the contrary. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992).

The Court concludes that the BOP has conducted a reasonable search for records responsive to plaintiff's three FOIA requests. At this stage, the Court ordinarily would assess whether the BOP properly withheld in full four pages of records found in plaintiff's Central and Medical Files under FOIA Exemptions 5, 6, 7(C), and 7(F). Quigley Decl. ¶ 8. Missing from the current record is any explanation for these withholdings, and the Court denies summary judgment on this ground as to Counts Nine and Ten of the Complaint.[9]

### C. Plaintiff's Requests to the USPIS

Plaintiff submitted three separate requests to the USPIS under the FOIA and the Privacy Act. *See* Defs.' Mot., Declaration of Lawrence Katz ("Katz Decl.") ¶¶ 5, 15-16.

On December 28, 2004, plaintiff submitted a request to the USPIS under the FOIA and

---

[9] The record does not reflect that the BOP ever assessed search or duplication fees, demanded advance payment of fees, or otherwise relied on plaintiff's non-payment of fees to any other component to deny his requests to the BOP. The Court denies defendants' motion to dismiss plaintiff's FOIA and Privacy Act claims against the BOP on the ground that he failed to pay search and duplication fees to the EOUSA and the FBI.

the Privacy Act for information about himself, nine individuals, and entities he called Vampire

Nation, Hexagon LLC, Hexagon Records, Search Syndicate, Inc., Merakesh Armano, HLLC and

HLC.  Defs.' Mot., Declaration of Lawrence Katz ("Katz Decl."), Ex. A (December 28, 2004

FOIA/PA Request) at 1-2.  The USPIS assigned the request FOIA No. 2005-FPIS-00020, *id.*, Ex.

B (January 7, 2005 letter from L. Freeman, Information Disclosure Technician, USPIS), and

"interpreted [plaintiff's] query to be in connection with Case No. 0583-1407269-ECMT(1)."  *Id.*,

Ex. C (January 13, 2005 letter from L. Freeman) at 1.  Subsequently, the UPIS informed plaintiff

that the information he requested "was . . . exempt from mandatory disclosure since it consisted

of investigatory records compiled for law enforcement purpose[s] . . . pursuant to [Exemption

7(A)], where release . . . could reasonably be expected to interfere with enforcement

proceedings."  Katz Decl. ¶ 7.

On April 14, 2005, the USPIS "disclosed 99 pages of record material" after redacting

certain information under FOIA Exemptions 5, 6, 7(C), 7(D), and 7(E).  Katz Decl. ¶ 9; *see id.*,

Ex. F (April 14, 2005 letter from L. Freeman).  In addition, the USPIS withheld in full 187 pages

of records under FOIA Exemptions 2, 3, 6, 7(C), and 7(E).  *Id.* ¶ 10.  Referred to the EOUSA

were two pages of records which had originated there.  *Id.* ¶ 11; *see id.*, Ex. G (April 14, 2005

letter from L. Freeman to M.A. O'Rourke, Assistant Director, FOIA/PA Unit, EOUSA).

Plaintiff submitted a second request to the USPIS on July 11, 2005.  Katz Decl. ¶ 15 &

Ex. M (July 11, 2005 FOIA/PA Request).  Plaintiff sought information pertaining to entities he

identified as VCD STREET, Intelli-soft, Global Business System, GHS Systems, Microsharp,

ADW International, Inc., and three individuals.  *Id.*, Ex. M at 1.  The USPIS responded to

plaintiff's request, assigned FOIA No. 2005-FIS-00180, by referencing his prior request and its

January 13, 2005 response.[10]  *Id.* ¶ 15.  "[T]he records [plaintiff] sought related to an investigation which was still open," and the USPIS "denied his request pursuant to [Exemption] 7(A)."  *Id.* & Ex. N (August 5, 2005 letter from T.A. Warner, Information Disclosure Technician, USPIS).  In addition, with respect to the three individuals about whom he sought information, the USPIS informed plaintiff that he must obtain and submit to the USPIS their written consent prior to disclosure of any records.  *Id*. ¶ 15.

Plaintiff submitted a third request on March 14, 2006.  *See* Katz Decl. ¶ 16.  Referencing FOIA No. 2005-FPIS-00020, plaintiff indicated that he was "renewing [his] request for records . . . relating to an open investigation that could not be disclosed," and upon learning that the investigation had been closed, plaintiff "request[ed] every record not previously disclosed to [him], pertaining to [him] or that mentions [his] name."  *Id.*, Ex. O (March 14, 2006 FOIA/PA Request).  The USPS assigned the request FOIA No. 2006-FPIS-00167.  *See id.*, Ex. P (March 24, 2006 letter from M.R. Baxter, Information Disclosure Technician, USPIS).  The Court already has decided that plaintiff failed to exhaust his administrative remedies with respect to FOIA No. 2006-FPIS-00167 because he failed to submit a suitable verification of his identity as is required under 39 C.F.R. § 266.6(b)(2).[11]  *Banks*, 538 F. Supp. 2d at 234-35.

The USPIS takes the position that the only allegations of the Complaint pertaining to the USPS were that he "propounded a renewed request to the [USPIS]" both under the FOIA and the Privacy Act, and that the USPIS "did not provide the requested records."  Compl. ¶¶ 13, 16

---

[10]     The connection between FOIA Nos. 2005-FPIS-00020 and 2005-FIS-00180 is unclear, as the subjects of the two requests differ.

[11]     The fact that plaintiff has submitted to the Court a Certification of Identity form, *see* Pl.'s Reply, Attach. (Certification of Identity signed on January 16, 2009), does not disturb the Court's prior ruling.  Exhaustion of administrative must occur "<u>before</u> an individual may seek relief in the courts."  *Oglesby*, 920 F.2d at 61-62 (emphasis added).

(Counts Five and Six).  The USPIS argues that the renewed request to which he referred  "<u>was</u> the March 26, 2006 request," Def.'s Renewed Mot. at 1 n.1 (emphasis in original), such that the Court's prior ruling "resolved all claims set out in the Complaint against USPIS."  *Id.*  Plaintiff, however, maintains "that the [USPIS] is still a party herein" and reiterates his interest in obtaining the records he has requested from the USPIS.  Pl.'s Reply at 1.

By assigning a new request number to each of plaintiff's three requests, the Court presumes that the requests are separate.  If the requests are indeed separate, dismissal of the third request, FOIA No. 2006-FPIS-00167, appears to have no impact on the others.  If, however, the USPIS has treated the second and third requests, FOIA Nos. 2005-FPIS-00020 and 2005-FIS-00180, as if they were related to or continuations of the first request, its supporting declaration does not establish this point.  Furthermore, if the first and second requests were not properly before the Court, the reasons for addressing them in defendants' initial dispositive motion are unclear.  Lastly, with respect to the first request, FOIA No. 2005-FPIS-00020, defendants' renewed motion does not address the deficiency identified in the Court's prior ruling: the USPIS "do[es] not demonstrate that [it] conducted a reasonable search for records responsive to plaintiff's FOIA and Privacy Act request[]."  *Banks*, 538 F. Supp. 2d at 238.  Accordingly, the Court denies summary judgment as to Counts Five and Six of the Complaint.

## III.   CONCLUSION

The Court concludes that plaintiff failed to exhaust administrative remedies as to his FOIA and Privacy Act requests to the FBI and that the BOP conducted a reasonable and adequate search for records responsive to plaintiff's requests.  Defendants' motion will be granted in part on these grounds, and the motion will be denied without prejudice in all other respects.

18

An Order accompanies this Memorandum Opinion.


Signed:          EMMET G. SULLIVAN
                 United States District Judge

Dated:           March 23, 2009